UGONZALES, Judge.
In this appeal, a hospital service district and its chief executive officer challenge a trial court judgment rendered in an open meetings law enforcement action.
FACTUAL AND PROCEDURAL BACKGROUND
The SMA Anesthesia Contract and the Change in Lakewood Medical Center Administration
In December of 1990, Hospital Service District Number 2 of the Parish of St. Mary d/b/a Lakewood Medical Center (Lakewood) entered into a contract with St. Mary Anesthesia Associates, Inc. (SMA) to provide round-the-clock anesthesia services at Lakewood Medical Center (LMC) in Morgan City, Louisiana. Under the contract, which automatically renewed on an annual basis from 1990 through the year 2000, SMA was the exclusive anesthesia services provider at LMC. The contract allowed SMA to terminate the agreement with notice for any reason and allowed Lakewood to terminate the agreement for cause. In 1998, Lakewood contracted with Dr. Willie J. Joseph, III, an anesthesiologist and the president of SMA, to be the Medical Director of Anesthesia Services at LMC for a three-year period. The latter contract with Dr. Joseph was terminable upon the termination of the anesthesia services contract with SMA.
Effective May 1, 2000, Our Lady of the Lake Hospital (OLOL) entered into an agreement with Lakewood to manage, operate, and administer LMC. Under the agreement, Mr. Clifford Broussard became the chief executive officer (CEO) of LMC. Lakewood’s Board of Commissioners (Board) retained full authority and ultimate control of LMC and was responsible for establishing general operating policies to be implemented by Mr. Broussard as CEO.
Mr. Broussard testified at trial that, upon his arrival at LMC, he became aware that the hospital had been losing money for several years. He further discovered there was internal turmoil on the medical staff and that there was a need for cohesiveness if LMC was to survive in the competitive market. He began to search for ways to improve LMC from a performance improvement standpoint.
1¿Review of the SMA Contract and Events That Followed
In June of 2000, Mr. Broussard reviewed the anesthesia services contract between Lakewood and SMA. His impression was that the contract benefited SMA, which allowed the corporation to cancel at its discretion at the end of any term, but that Lakewood did not have a similar option and could only terminate the contract for cause. He was also concerned that the contract was automatically renewable for an indeterminate term. He submitted the contract to Lakewood’s legal counsel for review. Soon thereafter, Mr. Broussard *402 met Dr. Joseph and expressed his concern regarding the SMA contract. He requested that Dr. Joseph, as Medical Director of Anesthesia Services, take a leadership role in a performance improvement ad hoc committee that had'been formed to review anesthesia services at LMC. Dr. Joseph refused to participate, indicating that this committee was merely the resurrection of a prior attempt by certain members of LMC’s medical staff to re-write the hospital’s anesthesia policy manual and that such was not necessary. Mr. Broussard later directed Dr. Joseph to participate in the committee, and Dr. Joseph again refused.
In light of what Mr. Broussard perceived as an “inability of Dr. Joseph to work in an administrative organization fashion,” because he had already decided the SMA contract was not in Lakewood’s interest, and in an effort to improve LMC’s business environment, Mr. Brous-sard decided that termination of the SMA contract was necessary.
Over the following months, several events involving anesthesia services at LMC occurred. In July of 2000, criticism of the hospital’s anesthesia services was expressed at a meeting attended by Doctors Anthony Sáleme and Murali Davuluri, pediatricians who practiced at LMC. In response, Drs. Sáleme and Davuluri wrote a letter to Mr. Broussard and to Mr. James Broussard, Chairman of the Board, communicating their concern over the criticism. The pediatricians indicated their impression that the “present anesthesia service has been a stable force within the hospital over the past decade” and urged the recipients of the letter to “be careful and cautious in attempting to solve the problem” and to “listen to all sides of the story before deciding on a solution.”
Ifiln August of 2000, Dr. Joseph was required to respond to a report received by the administration that obstetric nurses were allegedly being required to perform anesthesia-related procedures beyond the scope of their duties. Dr. Joseph denied the allegations and requested, on his behalf and for Dr. Brumfield, that the source of the accusations be made known to them. According to Dr. Joseph, no response was ever received. Further, a flier introduces into the record indicates that, at the time this inquiry was being conducted, a nurses’ workshop on the management of epidural analgesia was being offered at LMC.
On October 13, 2000, an incident occurred at LMC whereby Dr. Michelle Brumfield, the SMA anesthesiologist on call, was contacted regarding a pregnant patient requesting epidural anesthesia. Dr. Brumfield consulted with Dr. Rand Dooley, the obstetrician on call, a pain management plan was put into place, and the patient’s medical records were ordered from the hospital where she had received prior care. By the time Dr. Brumfield received the relevant information, Dr. Dooley was in the process of delivering the patient’s child.
By letter dated October 24, 2000, Mr. Broussard requested that Drs. Joseph and Brumfield appear before the Board on the following day to discuss the October 13, 2000 incident. After Drs. Joseph and Brumfield requested that the issue be addressed in open session, they were notified by Mr. Broussard, on October 25, 2000, that the matter had been deferred to LMC’s Medical Executive Committee and that the Board would address the matter after receiving the committee’s recommendation. Mr. Broussard admitted that he discussed the October 13, 2000 incident with several Board members.
The Executive Sessions and Termination of the SMA Contract
At an executive session of the Board on October 25, 2000, Mr. Broussard informed *403 the Board of his intent to terminate the SMA contract. In a letter to Mr. James Broussard, dated October 30, 2000, Mr. Broussard recommended personally and on behalf of OLOL “that should the Board decide on a course of action to address the issues surrounding [SMA] that (1) it decide to address the viability of the contract under Louisiana law concerning contracts of indeterminate duration and (2) ... that this issue be ^handled by a law firm of sufficient expertise and resources to give the service district adequate representation.” Mr. Broussard also stated that he and OLOL would “follow the direction of the Board nonetheless and assist in the direction it chooses to go,” but merely wished to give a statement of their position.
On November 1, 2000, the Board held a special meeting, at which several items of business, not including the SMA contract, were discussed in open session. Toward the end of the meeting, the Board went into executive session to discuss strategic planning. There is no evidence in the minutes of the meeting, or otherwise in the record, to reflect what particular matter was discussed in the executive session.
By letter dated November 1, 2000, and received by Dr. Joseph on November 6, 2000, Mr. Broussard advised SMA that he deemed the terms of the anesthesia services contract, “including its unlimited duration[,] ... to be contrary to [Lakewood’s] best interest” and that the contract was terminated effective 30 days from November 1, 2000. Later, by letter dated November 28, 2000, Mr. Broussard advised Dr. Joseph that, in accordance with its terms, his contract with Lakewood as the Medical Director of Anesthesia Services would terminate on the same day as the termination of the SMA contract.
By letter dated November 7, 2000, Dr. Dooley, the obstetrician involved in the October 13, 2000 incident, along with five other physicians who practiced at LMC, notified the Board of their support for SMA and their satisfaction with the services provided by Drs. Joseph and Brum-field. They encouraged the Board to “reconsider before taking a course of action that may be detrimental to community relations and the standard of surgical care at [LMC].”
On November 9, 2000, the Board held a special meeting that began with an executive session for the purpose of strategic planning. According to the minutes of the executive session, Lakewood’s counsel explained to the Board that Mr. Broussard had terminated the SMA contract by his letter dated November 1, 2000, and that “[t]his action was taken by Mr. Broussard within the scope of his statutory and contractual 17responsibiIities and in the best interest of the hospital service district.” The minutes further stated that “[t]he action can be reviewed and/or modified or set aside by the Board of Commissioners pursuant to La.R.S. 46:1055(5) if determined to be desirable or necessary in the public interest.” Following a brief discussion, the meeting was returned to open session and adjourned. No action was taken by the Board regarding the termination of the SMA contract.
Commencement of Litigation and Board Ratification of SMA Contract Termination
On November 16, 2000, SMA, Dr. Joseph, and Dr. Brumfield filed suit against Lakewood and Mr. Broussard. In their petition, the plaintiffs alleged: (1) Drs. Joseph and Brumfield had been subjected to acts of harassment relative to their providing of anesthesia services; (2) that a minority of physicians at LMC had conspired to cause Lakewood to terminate the *404 contract with SMA; (3) that since Mr. Broussard had become CEO of LMC, the Board had met in executive session to discuss the character or professional competence of the plaintiffs without notice to them, without an opportunity for them to respond, and in violation of the Open Meetings Law, La.R.S. 42:4.1 et seq.; (4) that the Board’s reliance on the Enhanced Ability to Compete Act[2] as an exception to the Open Meetings Law, was merely a subterfuge to hide discussions regarding the character or professional competence of the plaintiffs; (5) Mr. Broussard had engaged in a pattern of harassment against the plaintiffs to improperly create cause to enable Lakewood to terminate the contract; (6) Mr. Broussard had no authority to terminate the SMA contract on his own; and (7) the Board failed to take action in open session or by voice vote regarding Mr. Broussard’s act of terminating the SMA contract. The plaintiffs sought injunctive and declaratory relief, a mandamus, and a protective order, essentially seeking to void the termination of the SMA contract and to stop the Board from meeting in alleged violation of the Open Meetings Law.
|ROn December 5, 2000, the Board met in special session, going into executive session for strategic planning at the beginning of the meeting. After returning to open session, the Board passed a resolution stating Lakewood, through its Board, had “determined after review that the action of its CEO in terminating the contract between the district and [SMA] is in fact in the public interest” and that Mr. Brous-sard’s “termination of the contract between the district and [SMA] is hereby formally approved and to the extent necessary or desirable is hereby ratified.”
Also on December 5, 2000, the defendants answered the plaintiffs’ lawsuit, contending: (1) Mr. Broussard had authority to terminate the SMA contract without Board approval; (2) the members of the Board were individually and collectively aware of ongoing concerns regarding the SMA contract and had considered the contract was not in the best interest of LMC; (3) there was no violation of the Open Meetings Law and asserting the affirmative defense that all matters surrounding the SMA contract were deemed by the Board to be part of Lakewood’s strategic planning discussions authorized to be conducted in executive session by the Enhanced Ability to Compete Act; (4) the Board’s ratification of Mr. Broussard’s termination of the SMA contract essentially cured any alleged violation of the Open Meetings Law; and (5) as another affirmative defense, alleged the contract was contrary to public policy and subject to termination without cause because of its indeterminate length.
On December 8, 2000, the plaintiffs filed a supplemental and amending petition, contending the December 5, 2000 meeting in executive session, and the Board’s subsequent ratification of the termination of the SMA contract, were in violation of the Open Meetings Law and Article I, § 1 and Article XII, § 3 of the Louisiana Constitution. Alternatively, the plaintiffs contended that, if the court determined the meeting in executive session was authorized by the Enhanced Ability to Compete Act, the statute unconstitutionally abridged the plaintiffs and the public of their right to observe the deliberations of public bodies as guaranteed by Article I, § 1 and Article XII, § 3 of the Louisiana Constitution. Under cover of letter dated December 18, *405 2000, counsel for the | flplaintiffs forwarded a copy of the original and supplemental petition to Attorney General Richard P. Ieyoub.
The Trial, The Judgment, and Subsequent Events
After cross motions for summary judgment were filed by the parties and denied by the trial court, this matter proceeded to a bench trial on April 11 and 12, 2001. The trial court heard testimony from Drs. Joseph and Brumfield, as well as other members of the LMC medical and administrative staff. Testimony was also heard from Mr. Broussard and several members of the Board of Commissioners. At the end of the trial, the trial court ruled in open court that: (1) Mr. Broussard did not have authority to terminate the SMA contract as LMC’s CEO; (2) the termination of the contract was an act of the Board; (3) the Board’s meetings of October 25, November 1, November 9, and December 5, 2001, constituted violations of the Open Meetings Law, because discussions occurring at these meetings did not constitute strategic planning under the Enhanced Ability to Compete Act; and (4) the Board’s ratification of the termination of the contract did not cure the violations of the Open Meetings Law. The trial court determined it need not address the constitutionality of the Enhanced Ability to Compete Act. It further determined the SMA contract was not contrary to public policy.
On April 23, 2001, a hearing was held regarding the remedies available to the plaintiffs. On the same day, the trial court issued “Additional Reasons for Judgment” explaining its ruling.
On April 30, 2001, the trial court signed a judgment stating, in pertinent part:
IT IS ORDERED, ADJUDGED and DECREED that there be judgment in favor of Dr. Willie John Joseph, III, Dr. Michelle T. Brumfield, and St. Mary, plaintiffs, and against Lakewood Hospital and Clifford M. Broussard, defendants, declaring that the termination of the services contract between St. Mary and Lakewood Hospital and the termination of the contract as the Medical Director of Anesthesia between Dr. Willie John Joseph, III and Lakewood Hospital be and are hereby nullified.
IT IS FURTHER ORDERED, ADJUDGED and DECREED that there be judgment declaring that the contract between Our Lady of the Lake with Lakewood Hospital, the by-laws of Lakewood Hospital and state law does (sic) not empower the CEO of Lakewood Hospital to terminate the contract between St. Mary, plaintiff, and Lakewood Hospital without board authority.
I mlT IS FURTHER ORDERED, ADJUDGED and DECREED that a permanent injunction issue herein, restraining, enjoining and prohibiting Lakewood Hospital and Clifford M. Broussard, individually or as its Chief Executive Officer, including any person or persons acting for or on their behalf, from in any way terminating or seeking to terminate the contract between St. Mary and Lakewood Hospital except for cause or in accordance with law or the terms of the contract.
IT IS FURTHER ORDERED, ADJUDGED and DECREED that a permanent injunction issue herein, restraining, enjoining and prohibiting Lakewood Hospital and Clifford M. Broussard, individually or as its Chief Executive Officer, including any person or persons acting for or on their behalf, from in any way terminating or seeking to terminate the contract between Dr. Willie John Joseph, III with Lakewood Hospital as its Medical Director of Anesthesia, unless the service contract is terminated *406 for cause or in accordance with law or pursuant to the terms of the contract.
IT IS FURTHER ORDERED, ADJUDGED and DECREED that a writ of mandamus issue herein directed to the St. Mary and Lakewood Hospital ordering both contracts be reinstated effective in thirty (30) days from the execution and filing of this Judgment.
IT IS FURTHER ORDERED, ADJUDGED and DECREED that plaintiffs, St. Mary Anesthesia, Inc., Dr. Willie John Joseph and Dr. Michelle T. Brumfield, are herein granted thirty (30) days from the execution and filing of this judgment to amend this suit to allege any damage claim that they might have in this proceeding as a result of the actions taken by defendants.
IT IS FURTHER ORDERED, ADJUDGED and DECREED that a permanent injunction issue herein, restraining, enjoining and prohibiting Hospital Service District No. 2 of the Parish of St. Mary, State of Louisiana d/b/a Lakewood Medical Center and Clifford M. Broussard, individually or as its Chief Executive Officer, including any person or persons acting for or on their behalf from attempting to terminate the contract based on the Board of Commissioners belief, or the belief of its CEO, Clifford M. Broussard, or of its counsel’s belief that the contract is not in Lakewood’s best interest because it does not have a specific term.
IT IS FURTHER ORDERED, ADJUDGED and DECREED that a permanent injunction issue herein, restraining, enjoining and prohibiting Hospital Service District No. 2 of the Parish of St. Mary, State of Louisiana d/b/a Lakewood Medical Center and Clifford M. Broussard, individually or as its Chief Executive Officer, including any person or persons acting for or on their behalf from holding any meetings to discuss the contract between St. Mary Anesthesia and Lakewood Medical Center without the discussions being held in strict conformity with the Constitution and laws of the State of Louisiana.
IT IS FURTHER ORDERED, ADJUDGED and DECREED that exempted from this Mandamus and Injunction are any meetings that the Hospital Board of Commissioners and Mr. Clifford M. Broussard may have with its counsel lawfully called in connection with the Open Meetings Law and in connection with the pending litigation exception of the Open Meetings Law, including this litigation.
IT IS FURTHER ORDERED, ADJUDGED and DECREED that defendants, Hospital Service District No. 2 of the Parish of St. Mary, State of Louisiana d/b/a Lakewood Medical Center and Clifford M. Broussard, are hereby prohibited and enjoined from holding executive sessions regarding any discussion of or action relating to the contract between Lakewood Hospital and St. Mary Anesthesia or the contract between Lakewood Hospital and Dr. Willie John Joseph, III as the medical director of anesthesia under any exception to the open Inmeeting law, including “strategic planning” pursuant to the Enhanced Ability to Compete Law, La.R.S. 46:1072, et seq without notice to them and without their opportunity to request the discussion to be held in Open Session.
IT IS FURTHER ORDERED, ADJUDGED and DECREED that defendants, Lakewood Medical Center and Clifford M. Broussard, individually or as its Chief Executive Officer, are cast for all costs of these proceedings.
IT IS FURTHER ORDERED, ADJUDGED and DECREED that there be *407 judgment herein in favor of plaintiffs and against defendants, Lakewood Medical Center and Clifford M. Broussard, for the attorney fees of plaintiffs in the amount of $43,173.36.
IT IS FURTHER ORDERED, ADJUDGED and DECREED that there be judgment herein in favor of plaintiffs and against defendants, Lakewood Medical Center and Clifford M. Broussard, jointly, severally and/or in solido, the costs of the depositions of Clifford M. Broussard, Jimmy Broussard, Dr. Melvin Bourgeois, Dr. Robert Bourgeois, and Lea Hebert in the amount of $3,161.50.
JUDGMENT RENDERED by the oral reasons stated in Open Court on April 12, 2001 and the written reasons filed April 23, 2001.
On the same day the judgment was rendered, the defendants filed a motion to stay it, which was denied by the trial court. On May 4, 2001, the trial court signed an order granting Mr. Broussard a suspensive appeal and granting Lakewood á devolu-tive appeal from the April 30, 2001 judgment. Later, the plaintiffs answered the appeal, challenging the constitutionality of the Enhanced Ability to Compete Act.[3] The defendants filed a writ application with this court seeking a stay of the trial court’s April 30, 2001 judgment. On May 29, 2001, this court denied the defendants’ writ application, indicating they had an adequate remedy on appeal. (Docket No. 2001 CW 0984).[4]
11zOn July 13, 2001, SMA filed a separate suit against Lakewood, seeking a declaratory judgment that the Enhanced Ability to Compete Act is unconstitutional. St. Mary Anesthesia Associates, Inc. v. Hospital Service District No. 2 of the Parish of St. Mary, State of Louisiana d/b/a/ Lakewood Medical Center, 16th Judicial *408 District Court, Docket No. 107,891D. On September 7, 2001, a different trial judge than the one presiding over the present case signed a judgment declaring that the Act is constitutional. That judgment has been appealed to this court under Docket No. 2001 CA 2852.
On November 2, 2001, an amicus curiae brief was filed with this court by the Rural Hospital Coalition, Inc. in support of reversal of the trial court’s judgment.
ASSIGNMENTS OF ERROR
On appeal, the defendants make the following assignments of error:
1. The trial court committed error in finding that Mr. Broussard lacked legal authority to terminate the contract and in its finding that it was the Board and not Mr. Broussard which actually terminated the contract.
2. The trial court erred in finding that the Board’s meetings of October 25, November 1, November 9, and December 5, 2000 were conducted in violation of the Open Meetings Law and that the meeting of December 5, 2000 was ineffective to ratify the termination.
3. The trial court erred by ordering remedies which were beyond the scope of remedies afforded under the Open Meetings Law and remedies which were also violative of the separation of powers clause of the Louisiana Constitution and were an abuse of discretion in failing to exercise appropriate judicial restraint in the following particulars:
a. By prohibiting appellants from attempting to terminate the anesthesia agreement because of appellants’ or appellants’ counsel’s belief that the agreement was not in the Hospital’s best interest because it did not have a specific term.
b. By prohibiting appellants from holding executive sessions under the enhanced ability to compete strategic planning exception without giving ap-pellees opportunity to request discussions be held in open session.
c. By finding Mr. Broussard, the CEO, personally and individually liable for $46,334.86 in attorneys’ fees and court costs inasmuch as he is not a member of the public body and cannot vote and for further denying Mr. Broussard statutory immunity.
d. By including in the judgment at the request of the appellees the right to amend the completely adjudicated Open Meetings Law enforcement suit with a damage claim.
|1a14. The trial court committed reversible error by its handwritten notation on the motion and order of appeal of May 4, 2001.
In their answer to the appeal, the plaintiffs contend that, if the Enhanced Ability to Compete Act is determined to apply to the facts of this case, then the Act is unconstitutional.
TERMINATION OF THE SMA CONTRACT AS AN ACT OF MR. BROUSSARD OR AS AN ACT OF THE BOARD
In assignment of error number one, the defendants contend the trial court erred in determining: (1) Mr. Broussard did not have the authority to terminate the SMA contract as LMC’s CEO, and (2) the termination of the contract was actually effected by the Board and was not an act of Mr. Broussard.
The trial court should not have addressed Mr. Broussard’s authority within the context of this Open Meetings Law enforcement action. Whether Mr. Brous-sard did or did not have the authority as CEO of Lakewood to terminate the SMA contract does not alone obviate the need to *409 address whether the Board violated the Open Meetings Law by discussing the SMA contract in executive session. Further, we note that, in an Open Meetings Law enforcement action, the relief available is limited and would not include a declaration regarding Mr. Broussard’s authority. See La.R.S. 42:11(A). Therefore, we do not address this assignment of error.
SCOPE OF PUBLIC ACCESS TO DELIBERATIONS OF PUBLIC BODIES
In assignment of error number two, the defendants contend the trial court erred in determining the Board’s meetings of October 25, November 1, November 9, and December 5, 2000, were conducted in violation of the Open Meetings Law and that the meeting of December 5, 2000, was ineffective to ratify the termination.[5]
Article XII, § 3 of the Louisiana Constitution states that “[n]o person shall be denied the right to observe the deliberations of public bodies and examine public | udocuments, except in cases established by law.” The primary purpose of this constitutional provision insuring the right of citizens to observe the deliberations of public bodies is to protect citizens from secret decisions made without any opportunity for public input. Delta Development Company, Inc. v. Plaquemines Parish Commission Council, 451 So.2d 134, 138 (La.App. 4 Cir.), writ denied, 456 So.2d 172 (La.1984). To fulfill the purposes of Article XII, § 3, the legislature enacted the Open Meetings Law, La.R.S. 42:4.1 et seq., which requires that “[e]very meeting of any public body[6] shall be open to the public unless closed pursuant to R.S. 42:6 [allowing executive sessions], R.S. 42:6.1 [listing reasons executive sessions may be held], or R.S. 42:6.2 [executive meetings of legislative houses and committees].” La.R.S. 42:5(A). The Open Meetings Law is to be liberally construed in favor of open meetings. La.R.S. 42:4.1. Further, any action taken in violation of the Open Meetings Law shall be voidable by a court of competent jurisdiction. La. R.S. 42:4.9.
Notwithstanding the provisions of the Open Meetings Law, Louisiana Const, art. XII, § 3, grants the legislature authority to establish exceptions to the public’s constitutional right to observe the deliberations of public bodies by stating that the right exists “except in cases established by law.” In 1984, the legislature exercised this authority by enacting the Enhanced Ability to Compete Act, La.R.S. 46:1070-1076.
The stated purpose of the Enhanced Ability to Compete Act is found in La.R.S. 46:1071, in which the legislature recognized that the “market for hospital and health care services [was] becoming increasingly competitive” and that hospital service districts were then at a “competitive disadvantage.” As a result of the increasing competition, the legislature found that hospitals and other health care providers were being forced to “develop market strategies and strategic plans to effectively compete.” Id. In light of this situation, the legislature specifically declared that the purpose of the Enhanced Ability to Compete Act was “to enhance the ability of a hospital service district to compete Ineffectively and equally in the market for health care services.” Id. To *410 that end, the legislature declared the act was to be construed liberally.[7] Id.
The Enhanced Ability to Compete Act allows hospital service district commissions[8] to hold executive sessions for the discussion and development of marketing strategies and strategic plans despite the provisions of the Open Meetings Law. La. R.S. 46:1073. The Act defines “strategic plans” as “any plan, strategy, or device developed or intended to construct, operate, maintain a health facility or engage in providing, promoting, or selling a hospital health service.” La.R.S. 46:1072(4).
The trial court determined the Enhanced Ability to Compete Act did not apply to this case because discussions held at the October 25, November 1, and November 9, 2000 Board meetings did not constitute “strategic planning.” He further determined the Board’s December 5, 2000 ratification of Mr. Broussard’s termination of the SMA contract in executive session did not fall under the “pending litigation” exception to the Open Meetings Law. In oral reasons for judgment, the trial court stated:
[T]he Court does not find that [the Board] went into Executive Session to discuss strategic planning of the [SMA] contract, or anything related to the Anesthesia Department; rather it went into Executive Session to keep a dispute between Dr. Joseph and the hospital under wraps and hidden from public view because it felt that the public did not need to know about those kind of things....
Now were those meetings strategic planning to discuss improvement of the Anesthesiology Department? Not hardly. Those were meetings to terminate a contract.
half the Board felt that the contract was of an indeterminate term and that it was in Lakewood Hospital’s best interest to terminate the agreement, then Lakewood Hospital and the entire ... taxpaying public who support that hospital, would better have been served to have that discussion at an [o]pen Meeting.
[[Image here]]
Then the [Board] comes back on December the 5th, 2000 to have an Open Meeting to ratify [Mr. Broussard’s termination of the SMA contract.] Well, it didn’t. It didn’t have an Open Meeting to ratify the action. What it did have was an Open Meeting to vote to go into Executive Session, a vote in Executive Session, returned back to Open Session, a vote in Open Session with no discus *411 sion. That, this Court finds, is a violation of the Open Meetings Law....
The Board claims, “Well we went into that Executive Session because a lawsuit had been filed and wanted to discuss pending litigation.” Well the pending litigation was this case claiming that the Open Meetings Law had been violated. It was already a matter of public domain. The suit had been publicized. The termination of the contract had been publicized. There was no public interest being served by closing the meeting to discuss “pending litigation.” All that had to be done was for the Board to come in and have the discussion in Open Session and conduct its deliberations in front of the public and take a vote. That was not done. The Court finds that that was a violation of the Open Meetings Law and that therefore there was no ratification “of the earlier violations.”
We find the trial court legally erred in concluding Board discussions regarding the termination of the SMA contract and the subsequent ratification of termination of the contract did not fall within the meaning of “strategic planning” under the Enhanced Ability to Compete Act. We do not challenge the trial court’s factual determinations that the Board “went into Executive Session to keep a dispute between Dr. Joseph and the hospital under wraps ...” Undoubtedly, the Board was very concerned about the conflict between Mr. Broussard and Dr. Joseph, as well as events that occurred between Mr. Broussard’s arrival at LMC as CEO and the eventual termination of the SMA contract. As the board of a hospital in financial trouble and with a history of conflict among staff members, the fact that there was continuing turmoil involving the delivery of such a vital service as anesthesia services was of deep concern and a matter that needed to be resolved. The seriousness of the situation is illustrated by the testimony of Mr. John Guarisco, one of the members of the Board, who testified regarding the executive session held on October 25, 2000, at which Mr. Broussard announced his plan to terminate the SMA contract. According to Mr. Guarisco, the discussion was held in executive session |17because the Board did not want LMC’s competition to know the contract was going to be terminated. Mr. Guarisco explained that if competitors learned of the termination of the contract, they could “jump on it and maybe try to close the market on ... anesthesiologist^].” He stated the Board did not want to lose LMC’s “competitive edge.”[9]
As stated, the Enhanced Ability to Compete Act was specifically enacted “to enhance the ability of a hospital service district to compete effectively and equally in the market for health care services.” La. R.S. 46:1071. As such the Board was entitled to conduct executive sessions to discuss “strategic plans,” including “any plan ... to ... engage in providing, promoting, or selling a hospital health service.” La. R.S. 46:1072(4). We note there is a lack of jurisprudence defining the scope of the Act.[10] However, the Attorney General has *412 broadly construed its provisions in several opinions. See, for example, Attorney General Opinion No. 01-242 (July 10, 2001) (opining that a hospital service district could meet in executive session to adopt a variable incentive compensation plan for the president and CEO because such constituted part of the hospital service district’s strategic plan for retaining, developing, and supervising the skills, learning, knowledge, experience, and ability of its top administrator); Attorney General Opinion No. 95-193 (April 27, 1995) (opining the definition of “strategic plans” encompasses those plans concerning acquisition of property, medical practices, and ancillary medical service companies since those transactions advance the development of the health facility as contemplated by the Enhanced Ability to Compete Act). But see Attorney General Opinion No. 95-7 (February 9, 1995) (opining a particular management contract between a hospital and a management company did not constitute a marketing | ^strategy and/or strategic plan under the Enhanced Ability to Compete Act and, therefore, was not exempt from the Public Records Law.)
Likewise, under the liberal construction that must be afforded the Enhanced Ability to Compete Act, we conclude the trial court interpreted the definition of “strategic planning” too narrowly. The dispute involving Dr. Joseph, as well as its impact on the providing of anesthesia services at LMC, easily fall within the broad definition of “strategic planning” set forth in the Act. The discussions of the Board regarding the viability of the SMA contract constituted part of Lakewood’s plan to continue to provide anesthesia services to the patients of LMC. Further, as noted by Mr. Guarisco, the discussions were certainly related to Lakewood’s ability to protect its competitive edge in the health care market. Allowing this type of discussion in executive session fulfills the stated purpose of the Enhanced Ability to Compete Act.
For these reasons, we conclude the trial court erred in concluding discussions at the October 25, November 1, November 9, and December 5, 2000 Board meetings were violations of the Open Meetings Law.[11] Accordingly, the April 30, 2001 judgment will be reversed.
Constitutionality of the Enhanced Ability to Compete Act
Before the trial court below and in their answer to the defendants’ appeal, the plaintiffs contend that, if the Enhanced Ability to Compete Act is determined to apply to the facts of this case, then the act is unconstitutional. The trial court did not address the constitutionality of the Enhanced Ability to Compete Act based on its conclusion that the pertinent Board discussions did not constitute “strategic planning.” A review of the record also indicates that, although referenced by the parties, the constitutionality of the Enhanced Ability to Act was not fully argued before the trial court.
*413 LsAlthough the plaintiffs have properly-raised the constitutional issue in this case, an appellate court is not the proper forum in which such an issue is to be first addressed. Williams v. Jackson Parish Hospital, 31,492 (La.App. 2 Cir. 1/13/99), 729 So.2d 620, 624, writ denied, 99-0458 (La.4/1/99), 742 So.2d 558; Ayers v. Brazzell, 26,068 (La.App. 2 Cir. 9/21/94), 648 So.2d 406, 410. Because the constitutional issue was pretermitted, the appropriate procedure is to remand the case to the trial court for consideration of the constitutional validity of the Enhanced Ability to Compete Act. See Ayers v. Brazzell, 648 So.2d at 410. Thus, we will remand the case accordingly. The trial court is ordered to schedule a hearing and make a ruling on this issue in due course.[12] Copies of all documents addressing the constitutional issue should be forwarded to the Office of the Attorney General.[13]
DECREE
For the foregoing reasons, the trial court’s April 30, 2001 judgment is REVERSED. This case is REMANDED to the trial court for consideration and a ruling on the constitutionality of the Enhanced Ability to Compete Act and for further proceedings consistent with the views expressed herein. Costs of the appeal are assessed to the plaintiffs.

. Louisiana Revised Statute 46:1073 is referenced by the trial court and the parties as both the "Strategic Planning Exception” to the Open Meetings Law and as the Enhanced Ability to Compete Act. In this opinion, the latter reference will be used.

. On May 10, 2001, the trial court signed an order stating, "This Court retains jurisdiction to handle all matters incident to contempt and enforcement of its Original Judgment as well as an adjudication of any issue of damages.” The defendants suspensively appealed the May 10, 2001 order, which is a companion appeal also decided this date. See Dr. Willie John Joseph, III, Dr. Michelle T. Brumfield and St. Mary Anesthesia Associates, Inc. v. Hospital Service District No. 2 of the Parish of St. Mary, State of Louisiana d/b/a Lakewood Medical Center and Clifford M. Broussard, 01-1951 (La.App. 1 Cir. 12/28/01), 805 So.2d 400. On May 18, 2001, the trial court signed a document captioned "Per Curiam” which was filed into the appellate record. The defendants supplemented their writ application filed in this court, challenging the trial court’s issuance of the May 10, 2001 order and the May 18, 2001 Per Curiam.

. Also on May 29, 2001, the plaintiffs filed a second supplemental and amending petition, adding OLOL and individual members of the Board as defendants, and adding claims for breach of contract, anticipatory breach of contract, and damages. The defendants filed exceptions of lack of subject matter jurisdiction and improper cumulation, which the trial court denied in a hearing held on August 9, 2001. The defendants filed additional writ applications with this court, challenging the trial court’s retention of jurisdiction over the new defendants and new claims, because the appeal of all asserted issues had already been taken by the existing defendants. On September 27, 2001, this court stayed all proceedings in the trial court and ordered the parties to brief the issue of whether plaintiffs’ petitions improperly cumulated a suit for enforcement of the Open Meetings Law, a summary action, with a breach of contract and damages action, an ordinary action. Docket Nos. 2001 CW 2129, 2001 CW 2141. This court later maintained the stay and referred the writ applications to the same panel to which the appeals of the April 30, 2001 judgment, Docket No. 2001 CA 1951, and the May 10, 2001 order, Docket No. 2001 CA 1952, were randomly allotted. The issues relating to the May 10, 2001 order, as well as issues raised in Docket Nos. 2001 CW 2129 and 2001 CW 2141 are addressed in the companion appeal, Docket No. 2001 CA 1952.

. Based on our resolution of this case, we need not address the ratification issue.

. It is undisputed that the Board is a public body, the meetings of which are subject to the Open Meetings Law.

. We note that, although the provisions of the Open Meetings Law are to be construed liberally under La.R.S. 42:4.1, the provisions of the Enhanced Ability to Compete Act, an exception to the Open Meetings Law, are also to be construed liberally under La.R.S. 46:1071. Thus, the rule of statutory construction, requiring a court to narrowly construe statutory exceptions, does not apply in this case. See Wartelle v. Women’s and Children’s Hospital, Inc., 97-0744 (La. 12/2/97), 704 So.2d 778, 784.

. Under La.R.S. 46:1072(6), "hospital service district commission” means "the governing authority or managing board of a hospital service district as defined herein.” Under La.R.S. 46:1072(2), "hospital service district" means:
(a) A political subdivision of the state of Louisiana organized pursuant to an Act of the Legislature of Louisiana or pursuant to R.S. 46:1051 et seq.
(b) A hospital owned by a city, parish, or other political subdivision of the state of Louisiana or a hospital owned or operated by the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College.
It is undisputed that Lakewood and its board of commissioners fall within these statutory definitions.

. According to Mr. James Tucker, a past Board member, executive sessions of the Board had been held in the past to discuss other "competitive issues," such as the recruitment of physicians.

. There is only one published case where a court has discussed what acts would constitute "strategic planning” under the Enhanced Ability to Compete Act. In Calcasieu-Cameron Hospital Service District v. Fontenot, 628 So.2d 75, 77 n. 1 (La.App. 3 Cir. 1993), writ denied, 94-0168 (La.3/18/94), 634 So.2d 854, the court stated that a hospital district's decision, in a closed meeting, to expropriate property contiguous to its hospital fell within the *412 meaning of "strategic planning” under the Enhanced Ability to Compete Act.

. In the April 12, 2001 reasons for judgment, and in Additional Reasons for Judgment dated April 23, 2001, the trial court determined the SMA contract provided LMC with a competitive advantage and was not terminable because it had an indefinite term. Because we decide this case as an Open Meetings Law enforcement action and conclude that the Enhanced Ability to Compete Act applies herein, we do not reach the issues of the validity of the contract or the validity of the termination of the contract. Further, because we reverse the trial court's judgment based on the arguments presented in defendants’ assignment of error number two, we need not address issues raised in assignments or error numbers three and four.

. On July 13, 2001, SMA filed a separate suit in the 16th Judicial District Court, Docket Number 107,891, seeking a declaratory judgment that provisions of the Enhanced Ability to Compete Act were unconstitutional. On September 7, 2001, a judge, other than the one presiding over the present suit, signed a judgment declaring the Act to be constitutional. SMA appealed the judgment to this court under Docket Number 2001 CA 2852.

. By letter dated February 6, 2001, Assistant Attorney General Charles H. Braud, Jr. notified plaintiffs’ counsel that the Attorney General's office had received a copy of the supplemental petition in which plaintiffs challenged the constitutionality of the Enhanced Ability to Compete Act. He stated that the Attorney General would not exercise his privilege to be heard in the matter at that time but requested that all future pleadings pertinent to the constitutional challenge be mailed to his office.