836 So.2d 379 (2002)
ST. MARY ANESTHESIA ASSOCIATES, INC.
v.
HOSPITAL SERVICE DISTRICT NO. 2 OF the PARISH OF ST. MARY, State of Louisiana d/b/a Lakewood Medical Center.
No. 2001 CA 2852.
Court of Appeal of Louisiana, First Circuit.
December 20, 2002.
Writ Denied March 28, 2003.
*381 James B. Supple, Franklin, Counsel for Plaintiff/Appellant St. Mary Anesthesia Associates, Inc.
Nicholas F. LaRocca, Jr., Morgan City, George M. Papale, New Orleans, Counsel for Defendant/Appellee Hospital Service District No. 2 of The Parish Of St. Mary.
Norman F. Pizza, Margaret A. Keavney, New Orleans, Counsel for Amica Curiae Louisiana Hospital Association and Community Hospital Coalition.
*382 Jack Stolier, John O. Pieksen, Jr., New Orleans, Counsel for Amicus Curiae Rural Hospital Coalition, Inc.
David A. Woolridge, Baton Rouge, Counsel for Amicus Curiae Louisiana Press Association.
Salvador Anzelmo, Brian J. Burke, New Orleans, Counsel for Amicus Curiae Jefferson Parish Hospital Service District No. 2.
Charles H. Braud, Jr., Baton Rouge, Assistant Attorney General State of Louisiana.
Before: KUHN, DOWNING and GAIDRY, JJ.
GAIDRY, J.
This appeal raises the issue of the constitutionality of La. R.S. 46:1071, 46:1072, and 46:1073 (the core provisions of the "Enhanced Ability to Compete Act"). The plaintiff, St. Mary Anesthesia Associates, Inc. challenges these statutes as being overly broad and therefore violative of Article XII, Section 3 of the Louisiana Constitution of 1974. For the reasons set forth below, we affirm the decision of the trial court, rejecting plaintiff's claim and upholding the constitutionality of the statutes at issue.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY
The facts underlying this declaratory judgment action are set forth in detail in the opinion of the prior connected case of Joseph v. Hospital Service District No. 2 of the Parish of St. Mary, XXXX-XXXX, pp. 3-12 (La.App. 1st Cir.12/28/01), 805 So.2d 400, 401-08, writ denied, 02-0322 (La.4/19/02), 813 So.2d 1083. In that case, the plaintiff, St. Mary Anesthesia Associates, Inc. (SMA) and two anesthesiologists sued the defendant, Hospital Service District No. 2 of the Parish of St. Mary, doing business as Lakewood Medical Center (Lakewood) and its chief executive officer for alleged violations of La. R.S. 42:4.1, et seq. (the "Open Meetings Law"), as well as other claims. The plaintiffs sought injunctive and declaratory relief, mandamus, and a protective order. Specifically, the plaintiffs claimed that Lakewood's Board of Commissioners used the Enhanced Ability to Compete Act as a subterfuge to improperly conduct closed executive sessions. Reversing the judgment of the district court in the plaintiffs' favor, this court held that Lakewood did not violate the Open Meetings Law, and remanded the case for consideration of the plaintiffs' alternate argument that the Act is unconstitutional.
Following remand, SMA instituted this separate action[1] against Lakewood, seeking a declaratory judgment that La. R.S. 46:1071, 46:1072, and 46:1073 (referred to hereafter for convenience as "the Act"[2]) are unconstitutional, since their broad language contravenes Article XII, § 3. At the conclusion of the trial, the district court ruled that the Act was constitutional, reciting detailed oral reasons. The district court's judgment declaring the Act to be constitutional was signed on September 7, 2001. From that adverse decision, SMA appeals.

THE CONSTITUTION AND THE OPEN MEETINGS LAW
The United States Supreme Court has recognized a First Amendment right to "receive information and ideas" and to *383 receive speech. Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, 425 U.S. 748, 757, 96 S.Ct. 1817, 1823, 48 L.Ed.2d 346 (1976). Even that right, however, is not absolute. Davis v. East Baton Rouge Parish School Board, 78 F.3d 920, 928 (5th Cir.1996). While the public's right to be informed of the governmental process has occasionally been characterized as an inherent component of the First Amendment guarantees, or as derivative of other constitutional protections in the Bill of Rights, no definitive pronouncement to that effect has ever emanated from the United States Supreme Court. In fact, the Court has never unequivocally held that the First Amendment of the federal constitution establishes a right of access to governmental proceedings. See Gannett Company, Inc. v. DePasquale, 443 U.S. 368, 404-05, 99 S.Ct. 2898, 61 L.Ed.2d 608 (Rehnquist, J., concurring), 411, 99 S.Ct. 2898 (Blackmun, J., concurring in part and dissenting in part), 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979).
Since 1952, Louisiana has recognized by statute the right of the public to attend meetings of governmental bodies.[3] This commendable philosophy was later reinforced by the adoption of Article XII, § 3 of the 1974 Louisiana Constitution, providing:
No person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law. (Our emphasis.)
The avowed purpose of this constitutional provision ("Section 3") was to establish a general constitutional right of public access to deliberations of public bodies and to public records. This general right was expressly qualified, however, by an exclusionary proviso authorizing exceptions "in cases established by law." The records of the Constitutional Convention demonstrate that it was not the intent of the drafters to change the existing law, and that the language chosen by the drafters was intended to establish a presumption in favor of openness, except where a specific statutory limitation was created. IX Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts, Jan. 3 1974, at p. 3073. See generally Bruce V. Schewe, Comment, Entering the Door Opened: An Evolution of Rights of Public Access to Governmental Deliberations in Louisiana and a Plea for Realistic Remedies, 41 La. L.Rev. 192 (1980).[4]
Acts 1976, No. 665 revised the prior versions of La. R.S. 42:5, 42:6, and 42:7, enacted in 1952, and enacted a comprehensive statutory scheme implementing Section *384 3 in La. R.S. 42:4.1, et seq. (the "Open Meetings Law").[5]
As evidenced by the enactment of numerous state "sunshine laws" nationwide and the Federal Freedom of Information Act,[6] citizens' access to governmental policymaking and activities and to public records is a matter of considerable public interest and attention. This appeal raises the issue of the proper meaning and application of Section 3's exclusionary proviso, as applied to the Enhanced Ability to Compete Act.

APPLICABLE PRINCIPLES OF INTERPRETATION
Unlike the federal constitution, the state constitution's provisions are not grants of power but instead are limitations on the otherwise plenary power of the people exercised through the legislature. Board of Commissioners of Orleans Levee District v. Department of Natural Resources, 496 So.2d 281, 286 (La.1986). To hold legislation invalid under the constitution, it is necessary to rely on some particular constitutional provision that limits the power of the legislature to enact such a statute. Louisiana Public Facilities Authority v. Foster, XXXX-XXXX, p. 14 (La.9/18/01), 795 So.2d 288, 298.
Statutes are presumed constitutional unless fundamental rights, privileges, or immunities are involved. This presumption is especially forceful in the case of statutes enacted to promote a public purpose. Caddo-Shreveport Sales and Use Tax Commission v. Office of Motor Vehicles, 97-2233, p. 5 (La.4/14/98), 710 So.2d 776, 779.
The burden of proving that an act is unconstitutional is upon the party attacking the act. Moore v. Roemer, 567 So.2d 75, 78 (La.1990). This is a heavy burden. State v. Weaver, XXXX-XXXX, p. 5 (La.1/15/02), 805 So.2d 166, 170. It is not enough for a person challenging a statute to show that its constitutionality is fairly debatable; it must be shown clearly and convincingly that it was the constitutional aim to deny the legislature the power to enact the statute. Louisiana Public Facilities Authority v. Foster, XXXX-XXXX at p. 14, 795 So.2d at 298. To successfully challenge a legislative act as unconstitutional, the challenger must show that no circumstances exist under which the act would be valid. AFSCME, Council # 17 v. State Through Department of Health & Hospitals, XXXX-XXXX, p. 8 (La.6/29/01), 789 So.2d 1263.
With regard to the particular constitutional provision at issue, our Supreme Court has held that Section 3 "must be construed liberally in favor of free and unrestricted access to public documents, and that access can be denied only when a law, specifically and unequivocally, provides otherwise." DeSalvo v. State, 624 So.2d 897, 902 (La.1993).

ANALYSIS
La. R.S. 46:1071, 46:1072, and 46:1073 provide as follows:
*385 § 1071. Legislative findings and purpose
The legislature hereby finds that the market for hospital and health care services is becoming increasingly competitive. The legislature finds that hospital and other health care providers are contracting to engage in economic joint ventures or form partnerships to offer integrated health care services to the public. The legislature finds that this increasing competition is forcing hospitals and other health care providers to develop market strategies and strategic plans to effectively compete. The legislature further finds that hospital service districts are presently at a competitive disadvantage. The legislature hereby declares that the purpose of R.S. 46:1071 through 1076 is to enhance the ability of a hospital service district to compete effectively and equally in the market for health care services. Towards this end, the provisions of R.S. 46:1071 through 1076 shall be construed liberally.
§ 1072. Definitions
As used in this Subpart, the following words and phrases shall have the following meanings ascribed for each unless the context clearly indicates otherwise:
(1) "Hospital health services" means but is not limited to any clinical, diagnostic, or rehabilitation service and any administrative, managerial, or operational service incident thereto.
(2) "Hospital service district" means:
(a) A political subdivision of the state of Louisiana organized pursuant to an Act of the Legislature of Louisiana or pursuant to R.S. 46:1051 et seq.
(b) A hospital owned by a city, parish, or other political subdivision of the state of Louisiana or a hospital owned or operated by the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College.
(3) "Market strategies" means any plan, strategy, or device developed or intended to promote, sell, or offer to sell any hospital health service.
(4) "Strategic plans" means any plan, strategy, or device developed or intended to construct, operate, maintain a health facility or engage in providing, promoting, or selling a hospital health service.
...
(6) "Hospital service district commission" means the governing authority or managing board of a hospital service district as defined herein.
§ 1073. Market strategies and strategic planning
A. In addition to powers and duties otherwise provided and notwithstanding any law to the contrary, a hospital service district may develop marketing strategies for its existing hospital health services or any hospital health service to be provided in the future and may develop strategic plans for the development of any future hospital health service or facility.
B. Notwithstanding the provisions of R.S. 42:4.1 et seq. or any other law to the contrary, a hospital service district commission may hold an executive session for the discussion and development of marketing strategies and strategic plans.
C. Notwithstanding the provisions of R.S. 44:1 et seq. or any other law to the contrary, any marketing strategy and strategic plan of a hospital service district commission and the facility owned or operated by the district shall not be public record and shall be confidential but shall be subject to court subpoena.
As noted above, the express purpose of the Enhanced Ability to Compete *386 Act is "to enhance the ability of a hospital service district to compete effectively and equally in the market for health care services." To effectuate that purpose, the Act expressly authorizes executive sessions of hospital service district commissions "for the discussion and development of marketing strategies and strategic plans," as defined in La. R.S. 46:1072(3) and (4). It is undisputed that the authorized executive sessions may exceed in scope those sessions contemplated by the Open Meetings Law.
While the Open Meetings Law is expressly based upon the public policy expressed in Section 3, the Act is also ostensibly based upon the legitimate public purpose of maintaining the mission of hospital service districts to provide public health care in an increasingly competitive arena. The deleterious effect of open disclosure of the inside operations of a market-competitive public body is clearly analogous, for example, to that involved in real estate acquisition by a public body, as discussed by one commentator:
On the one hand, the public persuasively may claim that secret discussion of real estate acquisitions increases the risk that "inside" information will be channeled to persons who may use it for private gain and not to promote general public welfare. On the other hand, the public, interested in observing property acquisition deliberations, is also comprised of taxpayers who bear the costs speculation adds to the price of public purchases. Speculation, inevitable when a public body resolves in open session to acquire real estate, will raise prices and hamper efficient purchasing. (Footnotes omitted.)[7]
SMA contends that Section 3 establishes a "fundamental right akin the rights of speech, free press, and assembly." We disagree. Those rights viewed as preeminent and fundamental under our constitution are clearly set forth in Article I, Declaration of Rights.[8] The drafters of our constitution could have placed Section 3 within Article I, enshrining the right established in the pantheon of inalienable individual rights recognized by our state. They did not, implying that Section 3's right, although worthy of constitutional weight, does not rise to the level of Article I's enumerated rights.[9] We also note that Section 3's right of public access is not one of the individual rights traditionally considered *387 as fundamental in constitutional law, although it may embrace in part elements similar to those of the rights of free speech, a free press, assembly, and due process. While the Louisiana Supreme Court in Title Research Corporation v. Rausch, 450 So.2d 933, 936 (La.1984), characterized Section 3's right as "a fundamental right," it acknowledged that the right was subordinate "when a law, specifically and unequivocally, provides otherwise."[10] This prioritization simply does not comport with that associated with a "fundamental" and inalienable constitutional right.
In Board of Elementary & Secondary Education v. Nix, 347 So.2d 147, 151 (La.1977), the Supreme Court was called upon to interpret the meaning of the similar phrase "as provided by law," as used in the Article VIII, § 3(A) of the state constitution. At that time, the phrase "provided by law" was used 104 times in the constitution. As so used, it was held to mean "provided by legislation," the court citing La. C.C. art. I's definition of "law" as "the solemn expression of legislative will." Id. (Emphasis in original.) The use of the word "established" in the proviso at issue, instead of "provided," does not warrant a different interpretation.[11] Thus, the legislature is clearly empowered to fashion exceptions to the general right of public access. The central issue in this appeal, of course, is the permissible scope of such exceptions.
SMA argues that the term "cases" in the exclusionary proviso refers only to specific circumstances or situations, rather than to particular public bodies in general, and that the legislature may not constitutionally create a virtual exemption of a public body from Section 3 through overly broad and imprecise statutory definitions. Again, we disagree. It is certainly true that the term in ordinary usage refers to "situations" or "circumstances,"[12] but this does not warrant the conclusion that "cases" as used in the proviso may not, in appropriate scenarios, include all "circumstances" involving a particular public body. Here, the constitution has specifically empowered the legislature to "establish" such exceptions to Section 3 as it determines are in the public interest. One commentator has even characterized the exclusionary proviso as a "broad invitation to legislation," including legislation authorizing *388 complete exemptions from Section 3 to particular governmental bodies.[13]
We hold that the inclusion of the term "cases" in the proviso does not add a limitation on the legislature's authority to specify the scope of the exceptions it may establish. As correctly observed by one writer, "the plain language of article XII, section 3 of the state constitution empowers the legislature to exempt from disclosure any information it wishes." John A. Devlin & David Hilburn, Louisiana Constitutional Law, Developments in the Law 1990-1991, A Faculty Symposium, 52 La. L.Rev. 575, 584 (1992). Another commentator has even more forcefully asserted that "the subject is under legislative control, and the constitutional provision is merely a precatory admonition." (Our emphasis.) Lee Hargrave, "Statutory" and "Hortatory" Provisions of the Louisiana Constitution of 1974, 43 La. L.Rev. 647 (1983). Regardless of whether the Act is viewed as creating a de facto exemption of hospital service districts or only broad exclusions in their favor, it is a permissible exercise of the legislative power granted in Section 3's proviso.
Even so, SMA argues that the Act is unconstitutionally overbroad. The constitutional doctrine of "substantial overbreadth," generally applied only in First Amendment cases, has wide-ranging effects, for a statute found to be substantially overbroad is subject to facial invalidation. It is "strong medicine, to be applied sparingly and only as a last resort." State v. Cinel, 94-0942, p. 2 (La.11/30/94), 646 So.2d 309, 312. The overbreadth involved must be "substantial" before a statute can be invalidated on its face. Id. A litigant charging substantial overbreadth must demonstrate from the text of the challenged statute and from actual fact that a substantial number of instances exist in which the statute cannot be applied constitutionally. In a First Amendment context, this requires a showing of a realistic danger that the statute will compromise recognized First Amendment protections. Id., 94-0942 at p. 8, 646 So.2d at 315.
Although Section 3's right of public access encompasses considerations which overlap those protected by the First Amendment of the federal constitution, we conclude that the substantial overbreadth doctrine is not applicable here. Section 3's right is not a fundamental, inalienable constitutional right, in the sense of those enumerated rights under Article I, and we decline to extend that doctrine to cases arising under Section 3's ambit, or to fashion an analogous doctrine. Given the public purpose behind the Act at issue, we must conclude that SMA has failed to rebut the strong presumption in favor of its constitutionality.
Further, there is no logical basis for according Section 3's exclusionary proviso any less "sanctity" than that accorded its general language, as it is as equally enshrined in our constitution as the general right it qualifies. While narrower and more precisely drawn language in the Act would seem to be more in accord with the spirit of both Section 3 and the Open Meetings Law, that is an issue which addresses itself to the sound discretion of the legislature as the people's elected representatives. *389 Likewise, it is not appropriate for this court or any other to set the limits of the proviso's constitutional grant of power to the legislature based upon its own perception of how that plenary power should be exercised.[14]
The parameters of the Act's definitions and the scope of its authorized exclusions from Section 3's general rule should be addressed by proper statutory interpretation of the Act, as was done in the prior connected case, rather than by challenging the broad grant of legislative discretion conferred by Section 3 itself. Even if the Act can be interpreted as violative of Section 3 (a proposition with which we do not agree), it is a basic rule of statutory construction that if a statute is susceptible of two constructions, one rendering it constitutional and the other unconstitutional, the court will adopt that which will maintain its constitutionality, without doing violence to its language. Metro Riverboat Associates, Inc. v. Louisiana Gaming Control Board, XXXX-XXXX, p. 8 (La.10/16/01), 797 So.2d 656, 662, citing Hondroulis v. Schuhmacher, 553 So.2d 398, 416-17 (La.1988). Stated more concisely, if a statute is broad enough to be applied both validly and invalidly, the valid interpretation should be used when it conforms to the legislative intent or purpose of the statute. Mobley v. Department of Social Services, 594 So.2d 914, 917 (La. App. 1st Cir.1991).
We distinguish the cases of Succession of Lauga, 624 So.2d 1156 (La.1993), and Chamberlain v. State Through Department of Transportation and Development, 624 So.2d 874 (La.1993), cited by SMA, on the grounds that the scope of the constitutional grants of legislative power at issue were clearly less broad than that of Section 3's proviso. In Succession of Lauga, the Supreme court held that Article XII, § 5 "clearly and unambiguously place[d] a prohibition or express limitation on the power of the legislature to pass laws abolishing forced heirship," and that the codal article at issue violated that provision by depriving the plaintiffs of their individual rights. The court reasoned that the power of the legislature under that provision to pass statutes relating to forced heirship was subordinate to the protection of forced heirship, and had to be interpreted to accomplish that public purpose. In Chamberlain, the Supreme Court expressly found that the waiver of the state's sovereign immunity in tort and contract expressed in Article XII, § 10(A) was self-executory. It further held that the power allotted to the legislature in § 10(C) was clearly limited by its language to enactment of legislation regulating the procedure s and enforcement of judgments in such cases, and did not extend to substantive monetary limitations on the extent of the waiver. No such limitations on the power of the legislature are set forth in Section 3's proviso, nor can any be implied from the history of Section 3.

DECREE
Our review of the Act, in light of its avowed public purpose, convinces us that its terms are not so broad as to warrant the finding that they violate plaintiffs' rights both bestowed and limited by Section *390 3, let alone any fundamental, inalienable right guaranteed them under the Louisiana or federal constitutions. The judgment of the district court is affirmed.
All costs of this appeal are assessed to the plaintiff-appellant, St. Mary Anesthesia Associates, Inc.
AFFIRMED.
DOWNING, J., concurs and assigns reasons.
DOWNING, J., concurs and assigns reasons.
I concur. In my opinion, Joseph v. Hospital Service District No. 2 of Parish of St. Mary, XXXX-XXXX, 805 So.2d 400 (La.App. 1 Cir. 12/28/01) was wrongly decided. This exception to the open meetings law was interpreted so broadly that a pest control contract could be considered "strategic planning." Such a broad interpretation negates the intent of the open meetings law. However, even though I disagree with that holding, I am compelled to follow it.
Even so, the breadth of the majority's dicta here is expansive. Under the law and facts before us, I agree with the result. But I would narrow the discussion to the law and facts before us and limit the opinion accordingly. I can foresee circumstances where the law might lead to a result opposite of the one reached today. Our decisions should be narrowly tailored so that we do not decide more than is before us.
NOTES
[1] See Joseph v. Hospital Service District No. 2 of the Parish of St. Mary, XXXX-XXXX at p. 12, 805 So.2d at 407-08.
[2] Acts 1984, No. 322, § 1, the Enhanced Ability to Compete Act, enacted La. R.S. 46:1071 through 46:1076. Only the first three numbered statutes are at issue in this appeal.
[3] See Acts 1952, No. 484, originally enacting La. R.S. 42:5, et seq.
[4] This commentator makes the following observations regarding the issue of whether Section 3 is self-executory:

Because the right to observe the deliberations of public bodies is guaranteed, the provision seems self-executory; such a right is legally enforceable without legislative action.... Yet, as the constitutional right unqualifiedly relates to "public bodies," whether the provision will be effectively self-executing is uncertain. Undoubtedly, the principle was framed with the intent that the constitutional provision co-exist with a statutory scheme authorizing the public to view governmental activity. Specifically, as the statement includes the proviso that it is inapplicable in cases established by law, legislation governing the public's right of access to and observation of governmental deliberations may remove the topics treated statutorily from the constitution's self-executing effect. The "except in cases established by law" clause apparently envisions this situation.
Id. at pp. 198-200. (Footnotes omitted.)
[5] To fulfill and implement the purposes of Article XII, § 3, the legislature enacted the Open Meetings Law, La. R.S. 42:4.1, et seq., which requires that "[e]very meeting of any public body shall be open to the public unless closed pursuant to R.S. 42:6 [allowing executive sessions], R.S. 42:6.1 [listing reasons executive sessions may be held, including "matters now provided for or as may be provided for by the legislature"] or R.S. 42:6.2 [executive meetings of legislative houses and committees]." La. R.S. 42:5(A). The Open Meetings Law is to be liberally construed in favor of open meetings. La. R.S. 42:4.1. Further, any action taken in violation of the Open Meetings Law shall be voidable by a court of competent jurisdiction. La. R.S. 42:4.9.
[6] 5 U.S.C. § 552.
[7] Schewe, supra, at 216. See also La. R.S. 42:6.1(A)(2), authorizing executive sessions for "[s]trategy sessions or negotiations with respect to collective bargaining, prospective litigation after formal demand, or litigation when an open meeting would have a detrimental effect on the bargaining or litigating power of the public body."
[8] La. Const. art I, § 1 provides that "[t]he rights enumerated in this Article are inalienable by the state and shall be preserved inviolate by the state." Among those enumerated rights are the fundamental rights of freedom of speech (§ 7), freedom of the press (§ 7), and assembly (§ 9), as listed by SMA.
[9] Our conclusion is supported by the language of La. Const. art. I, § 24, providing that "[t]he enumeration in this constitution of certain rights shall not deny or disparage other rights retained by the individual citizens of the state." Although recognizing innominate rights other than the enumerated constitutional rights, this provision implicitly accords those rights not specifically recognized by the Constitution less gravity than the enumerated rights. Likewise, it implies that Article I's "inalienable" rights are entitled to greater weight than those enumerated in other constitutional articles. Article I, § 24 "does not have the effect of limiting state government to enumerated powers. The state continues to have the power to legislate generally in all fields, except as limited by the state or federal constitutions or statutory provisions." Lee Hargrave, The Declaration of Rights of the Louisiana Constitution of 1974, 35 La. L.Rev. 1, 67 (1974).
[10] In State v. Perry, 610 So.2d 746, 755 (La. 1992), the Supreme Court explained that the rights set forth in Article I's Declaration of Rights "embody and often amplify the protection of certain individual rights" guaranteed by the federal constitution, and provide greater protection of individual rights than does the federal constitution with respect to state rights phrased identically to federal counterparts, [citations omitted]; ... and state rights that have no explicit federal analog [citing Title Research Corporation ].... The consensus of the justices of this court has been that "our state's declaration of individual rights... represent[s] more specific ... [and] broader protection of the individual." [Citation omitted.] This language supports the position that Article I's enumerated rights are certainly entitled to a greater level of protection than the right conferred by Article XII, § 3. The use of the adjective "fundamental" in Title Research Corporation v. Rausch, 450 So.2d 933, 936 (La.1984), insofar as it may be construed as being equivalent to "inalienable," is unfortunate. Its use is correct insofar as it is limited to meaning a right having its source in the state constitution. All inalienable rights are fundamental, but all fundamental rights are not inalienable. Black's Law Dictionary 675, 759 (6th ed.1990).
[11] Counsel for both parties, in their eloquent oral arguments to this court, inadvertently used the phrase "cases provided by law" in discussing Section 3's proviso. (Our emphasis.)
[12] Black's Law Dictionary 215 (6th ed.1990); Merriam-Webster's Collegiate Dictionary 176 (10th ed.1998).
[13] Schewe, supra, at 200-01. The commentator discusses the legislative removal of "topics" from the general right of public access, but questions whether a specific "exemption" of a public body by statute might be "interpreted as not a case established by law," and therefore as unconstitutional. Id. at 200. (Emphasis in original.) However, he concedes that "it is likely that, were the issue to be litigated, [an] exemption from the open meetings law would be found to be a case provided by law, on the grounds of the constitutional provision's broad invitation to legislation." Id. at 201.
[14] See State v. Smith, 99-0606, 99-2015, 99-2019, 99-2094, pp. 10-12 (La.7/6/00), 766 So.2d 501, 510 ("[O]ur constitution is not ... subject to judicial amendment to express whatever a majority of the court happens to conclude at any given time is the more enlightened viewpoint on a particular controversial issue. If our constitution can be judicially amended in such a manner, that constitutes government by this court, rather than government through a constitutional system of which this court is a separate and equal branch.")