Dear Mr. Thibaut:
The governing board [Board of Commissioners] of Pointe Coupee Parish Health Services District Number One, by resolution, has requested an opinion from our office regarding a request by a Pointe Coupee Parish police juror for documents which reveal the total earnings of an individual who is a physical therapist. You explain that the physical therapist has a contract with the district to provide all physical therapy services, and he is compensated based on a percentage of gross revenues generated for services rendered to inpatients and outpatients. He is an independent contractor and not an employee of the district. You further explain that this contract is presently being renegotiated by the board for the district due to the expiration of its primary term, and the board is concerned that the information sought may be commercially sensitive under the provisions of R.S. 46:1071 et seq. You also inform us that the board is worried about the privacy rights of the specific individual and is troubled that the income figures of a private person may also be confidential and protected under various state and federal provisions.
First of all, the provisions contained in R.S. 46:1071 et seq.are special legislative provisions designed to promote the ability of public hospital service districts to compete in the rendering of health care services. This set of statutes is known by the title of "Enhanced Ability to Compete" and its legislative purposes are set forth in R.S.46:1071, which reads as follows:
 "The legislature hereby finds that the market for hospital and health care services is becoming increasingly competitive. The legislature finds that hospital and other health care providers are contracting to engage in economic joint ventures or form *Page 2 
partnerships to offer integrated health care services to the public. The legislature finds that this increasing competition is forcing hospitals and other health care providers to develop market strategies and strategic plans to effectively compete. The legislature further finds that hospital service districts are presently at a competitive disadvantage. The legislature hereby declares that the purpose of R.S. 46:1071 through 1076 is to enhance the ability of a hospital service district to compete effectively and equally in the market for health care services. Towards this end, the provisions of R.S. 46:1071
through 1076 shall be construed liberally."
It is our understanding that Pointe Coupee Parish Health Services District Number One operates Pointe Coupee General Hospital and is a "hospital service district" as provided by R.S. 46:1072(2).
In order to further this legislative purpose, R.S. 46:1073 provides,
 "§ 1073. Market strategies and strategic planning
 "A. In addition to powers and duties otherwise provided and notwithstanding any law to the contrary, a hospital service district may develop marketing strategies for its existing hospital health services or any hospital health service to be provided in the future and may develop strategic plans for the development of any future hospital health service or facility.
 "B. Notwithstanding the provisions of R.S. 42:4.1 et seq. or any other law to the contrary, a hospital service district commission may hold an executive session for the discussion and development of marketing strategies and strategic plans.
 "C. Notwithstanding the provisions of R.S. 44:1 et seq. or any other law to the contrary, any marketing strategy and strategic plan of a hospital service district commission and the facility owned or operated by the district shall not be public record and shall be confidential but shall be subject to court subpoena."
Under R.S. 46:1077, the contract between the hospital service district and the physical therapist to provide for physical therapy services by the district or its hospital is a joint venture to obtain, on behalf of the district, a tangible benefit for a public purpose.
The constitutional validity of these statutes was upheld in St. MaryAnesthesia Assoc., Inc. v. Hospital Service Dist. No. 2 of St. MaryParish, et al., 2001-2852 (La.App. 1st Cir. 12/20/02), 836 So.2d 379,writ den. 2003-0220 (La. 3/28/03), 840 So.2d 577. *Page 3 
In our opinion, it is the board which really has to make a factual determination, in the first instance, whether the information sought is commercially sensitive under the provisions of R.S. 46:1071 et seq. and, in doing so, must make its own evaluations of the health services marketing conditions in the greater region of the state which it serves. It is certainly conceivable that the information falls within the protection of R.S. 46:1073.
In Joseph v. Hospital Service Dist. No. 2 of St. Mary Parish, 2001-1951 (La.App. 1st Cir. 12/28/01), 805 So.2d 400, writ den. 2002-0322 (La. 4/19/02), 813 So.2d 1083, the district board had had a contract with the plaintiff corporation to provide anesthesia services for its hospital. After new management took over the operation of the hospital, the new management and, eventually, the board decided to terminate the contract because of its unfavorable conditions — namely, it could be cancelled by plaintiff corporation at plaintiff's discretion at the end of a term, although the board could cancel only for cause, and it was automatically renewable for an indeterminate term. [It appeared that the new management and the board wanted at least to renegotiate the contract anew.] The board met in a series of executive sessions to discuss the matter. Later, one of the board members explained the need for the executive sessions and testified that the board did not want the hospital's competition to know that the contract was going to be terminated, because if they did, they could "jump on it and maybe try to close the market on . . . anesthesiologist[s]." He explained that the board did not want to lose the hospital's "competitive edge." Reversing the lower court, the appellate court held that the executive sessions were proper under R.S.46:1073, so that the board could compete effectively and equally in the market for health care services.
Likewise, if the board for Pointe Coupee Parish Health Services District Number One, in preparing to renegotiate its physical therapy services contract, determines that disclosing the total income earned by the physical therapist based on his percentage of the revenues brought in by such services would endanger the district's continuing to provide physical therapy services, because competitors would try then to tweak the figures and develop their own marketing strategy to offer slightly more [even at the same percentage] and woo physical therapists away from the district and either close to the district the market of physical therapy services or, by driving up the costs of providing physical therapy services, make the providing of such services less affordable and, perhaps eventually, unaffordable, then clearly the information on total earnings sought would fall within the confidential protection of R.S.46:1073. But we are not in a position to make that factual determination for the board. While the factual determination of the board can be tested for reasonableness under all the circumstances in a court of law, it should, nevertheless, be entitled to great weight and deference, since the board will usually know more about health services competition in its area than the court will. *Page 4 
If the total earnings sought by the requestor of the public record is protected by R.S. 46:1073, then it need not be disclosed, and the question of the physical therapist's privacy becomes academic. If the information sought is not protected by R.S. 46:1073, then the privacy question must be addressed.
The board is rightfully concerned about the privacy rights of the physical therapist. Across the nation, the law and jurisprudence as to whether a public entity should disclose salary, wage, and earnings information is neither clear nor well-settled. See 100 A.L.R.3rd 699. Neither does the board want to violate the civil rights of the physical therapist [including his right to privacy under the Fourth and Fourteenth
Amendments to the United States Constitution, as well as Art. I, § 5, of the Louisiana Constitution], nor does the board want to refuse the public record request and then lose a mandamus suit to disclose and become liable for attorney fees under the public records law, R.S. 44:1 et seq.
and 31 et seq. See our recommendation on this dilemma near the close of Attorney General Opinion 01-435 (copy enclosed) for notifying the person to whom the information sought pertains that such information is being sought and having him inform the board in writing whether he waives his right to privacy in the matter [in which case the information may be disclosed] or whether he will assert his right to privacy, and if so, the board can implead into court both the requestor of the information and the person to whom the information pertains to litigate a declaratory judgment action (not a public records mandamus action) and obtain a final adjudication of the matter in the form of a declaratory judgment.
In the case of litigation between the requestor of information and the person to whom the information pertains, the court will, first and foremost, determine whether there is actually a genuine right to privacy in the total earnings information sought. If there is not a genuine right to privacy in such information, then the judgment would declare the information to be a public record available for inspection. If there is a genuine right to privacy in such information, then the court must balance the right to privacy against the right of the public to know this expenditure of public funds. See Capital City Press v. East Baton RougeParish Metropolitan Council, et al., 96-1979 (La. 7/1/97), 696 So.2d 562;Local 100, Service Employees, Intern. Union v. Smith, 36,454 (La.App. 2nd Cir. 10/23/02), 830 So.2d 417; Attorney General Opinion No. 92-715 (copy enclosed) and the authorities cited therein.
Ordinarily, records reflecting the payments made by a public body are public records available for inspection by qualified requestors. R.S. 44:1et seq. and 31 et seq. Caple v. Brown, 323 So.2d 217 (La.App. 2nd Cir. 1975) (sheriffs salary fund); Attorney General Opinions No. 92-715 (copy enclosed) (names, job positions, and salaries of parish employees) and No. 02-465 (copy enclosed) (payroll information of town employees). [It should be noted that despite some of the language quoted or used in these authorities, the St. Mary Anesthesia Assoc., Inc. case, supra, held that the right of public access contained in Art. 12, § 3, of the Louisiana Constitution was not really a "fundamental" right as are the rights in Art. I of the Louisiana Constitution (including the right to privacy in Art. I, *Page 5 
§ 5, thereof) and the Joseph case, supra, held that when the statutes providing exceptions to the public access laws explain that they themselves are to be liberally construed, the rule of narrow construction of exceptions to the public access laws does not apply.]
In Angelo lafrate Const., L.L.C. v. State ex rel. Dept. of Transp. andDevelopment, 2003-0892 (La.App. 1st Cir. 5/14/04), 879 So.2d 250, writden. 2004-1442 (La. 9/24/04), 882 So.2d 1131, the Court of Appeal for the First Circuit held that the employees of a private contractor who was doing work for the Louisiana Department of Transportation and Development had a subjective expectation of privacy in their wage information that was objectively reasonable and that no public interest would be served by the disclosure of the contractor's complete payroll information. The state department had collected the information only to assure compliance with federal law, which apparently had required it [but under federal law, a federal agency could not disclose such information]. Nevertheless, unlike the case of the board and the physical therapist, the expenditure of money by the private contractor to his employees in the form of wages is not an expenditure of public funds. [It should be noted that the court in this case cited, on page 13 n. 10, 879 So.2d at 260
n. 10, Attorney General Opinion No. 01-435 (copy enclosed) for its "compelling analysis" relating to name and address protections.]
In light of the Angelo lafrate Const. case, we think that the court would find that there is a reasonably objective privacy interest in the total amount of one's wages but that the need for the public to know what the expenditures are of public funds for personal or professional services by a public body will outweigh that privacy interest.
We trust that this opinion has adequately answered your inquiry, but if you have any additional questions, please forward them to us. With warmest regards, we remain
 Yours very truly,
 CHARLES C. FOTI, JR. Attorney General
 By__________________ THOMAS S. HALLIGAN Assistant Attorney General
 CCF, Jr./TSH/sfj
 October 26, 1992 OPINION NUMBER 92-715
90-C PUBLIC RECORDS
LSA-Const. Art. 1, Sec. 5, R.S. 44:11, R.S. 44:1 et. sec.
Names, job titles, and salaries of public employees of a parish are subject to inspection under the Public Records Law. Under LSA — R.S.44:11, the home address of a public employee is protected and may not be disclosed where the employee has requested this information remain confidential.
 Mr. Steven D. Wilson Parish President Lafourche Parish Council P. O. Drawer 5548 Thibodaux, LA 70302
Dear Mr. Wilson:
This office is in receipt of your opinion request directed to Attorney General Richard P. Ieyoub. The request has been assigned to me for research and reply.
You state a councilman of the parish recently submitted a request to the parish personnel department asking for the release of the following information concerning parish employees:
 (1) name of the employee;
 (2) the employee's position;
 (3) the employee's salary; and
 (4) the employee's home address.
You further inquire whether any legal prohibition exists concerning the release of this information.
The general rule of law concerning public access to agency records states all records which are maintained by a public body may be subject to inspection by the general public pursuant to the provisions of the Public Records Act, LSA-R.S. 44:1, et. seq. The Act defines "public records" as:
 "All books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, recordings, memoranda, and papers,. . . . having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business . . . performed by or under the authority of the constitution or laws of this state,. . . . . . ." LSA-R.S. 44:1(A)(2). *Page 2 
Unless specically exempted, all records, documents, and information used in the performance of any public function are included. Caple v.Brown, 323 So.2d 217 (La.App. 2nd Cir. 1975). The Act does contain the following provision concerning the confidential nature of certain personnel records within LSA-R.S. 44:11, which provides:
 "A. Notwithstanding anything contained in this Chapter or any other law to the contrary, the following items in the personnel records of a public employee of any public body shall be confidential:
 (1) The home telephone number of the public employee where such employee has chosen to have a private or unlisted home telephone number because of the nature of his occupation with such body.
 (2) The home telephone number of the public employee where such employee has requested that the number be confidential.
 (3) The home address of the public employee where such employee has requested that the address be confidential.
The statute excepts the home address of the employee where the employee has indicated he wishes same to remain confidential. Such information is protected by the statute and may not be released.
LSA-R.S. 44:11 does not protect a public employee's name, position, or salary, and the inquiry then becomes whether the individual's constitutional privacy interest under LSA-Const. Art. 1, § 5 is invoked. The First Circuit recently set forth the appropriate analysis:
 "First, it must be determined whether the public employee had a reasonable expectation of privacy against disclosure of the pertinent information. If there was no reasonable expectation of privacy, that is the end of the inquiry. If a reasonable expectation of privacy is found, we then must balance the public's right to disclosure against the public employee's right to privacy." Hatfield v. Bush, 572 So.2d 588
(La.App. 1 Cir. 1990); citing Gannett River States Publishing v. Hussey, 557 So.2d 1154 (La.App. 2nd Cir. 1990). *Page 3 
Concerning the name of a public employee, the court in Hatfield stated "the public has a right to know who it is hiring to perform public work", absent any special circumstance requiring nondisclosure.572 So.2d at 593. Further, this office has previously recognized names, job titles, duties, salaries and dates of employment of public employees must be disclosed from the personnel records of a public agency. See previously released Attorney General Opinion Numbers 81-353 and 85-724, copies of which are attached, which specifically address the release of salary and job title/position information.
We hope this interpretation of the law will be helpful to you. Should you have further inquiries, please contact our office.
 Very truly yours,
 RICHARD P. IEYOUB Attorney General
 BY:________________ Kerry L. Kilpatrick Assistant Attorney General
 RPI/KLK/0141E
 March 19, 1981 OPINION NUMBER 81-353
71. 90-C. Salary of municipal employees are people records, not entitled to privacy protection.
 Mr. Walton J. Barnes, II, Esquire City Attorney, City of Zachary Post Office Box 596 Zachary, Louisiana 70791
Dear Mr. Barnes:
Reference is made to your letter dated March 13, 1981, in which you requested our opinion on the following questions:
 1. Are the names and salaries of persons employed by the City of Zachary public records?
 2. If such records are public records, is the disclosure and publication of an individual's salary protected from disclosure under Article I, Section 5, Louisiana Constitution of 1974, relative to the freedom from invasion of privacy?
Our constitution, cognizant of the inherent right of the public to be informed and of the right of the individual to be left alone, has made provision for the right to examine public documents and the right of the individual to his privacy. These rights are found at Article XII, Section 3 and Article I, Section 5, Louisiana Constitution of 1974, which provide respectively: *Page 2 
 "No person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cased established by law."
 "Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court."
R.S. 44:1A(2) defines public documents persons are granted the right to examine under the above constitutional provision:
 All books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, recordings, memoranda, and papers, and all copies, duplicates, photographs, including microfilm, or other reproductions thereof, or any other documentary materials, regardless of physical form or characteristacs, including information contained in electronic data processing equipment, having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the *Page 3 
March 19, 1981 authority of any ordinance, regulation, mandate, or order of any public body or concerning the receipt or payment of any money received or paid by or under the authority of the constitution or the laws of this state, are "public records," except as otherwise provided in this Chapter or as otherwise specifically provided by law. (Emphasis added.)
Records containing the name and salary of persons employed by a governmental entity are clearly public records under the definition found at R.S. 44:1A(2).
In order to determine whether disclosure and the potential publication of salary information rises to a dimension as to claim the constitutionally recognized protection, it is necessary to resolve the threshold issue of whether persons employed by the government have a reasonable expectation of privacy that their names and salaries will not be disclosed to the public. Clearly, in an analysis of this issue the status of the employees of Zachary as public employees is controlling.
Two cases are pertinent to our analysis of this issue. Trahan v.Larivee, 365 So. 2d 294 (3rd Cir. 1978), writ denied 366 So. 2d 564 (La. 1979); Webb v. City of Shreveport, 371 So. 2d 316 (2nd Cir. 1979).
In Trahan, members of the press (a radio station) sought to examine evaluation forms. The evaluations had been ordered by the mayor. The persons evaluated on their job performance were the heads of the various municipal departments.
After finding these records to be public records under R.S. 44:1 A(2), the court focused attention on the issue of whether disclosure of performance evaluation reports would constitute an invasion of the department heads' constitutional right to privacy. The Trahan court held disclosure would violate Article I, Section 5, Louisiana Constitution of 1974. *Page 4 
The Court of Appeal for the Third Circuit relied heavily upon the federal precedent in Vaughn v. Rosen, 383 F. Supp. 1049 (D.C., D.C. 1974) which held:
 Release of the desired information [civil service evaluation records identifiable by name] would clearly constitute an invasion of privacy. Identification of evaluated employees could expose them to practical disabilities, such as loss of future employment or friends, and perhaps acute embarrassment. While the mere loss of anonymity may be considered only a minor invasion of privacy, to disclose an individual's name together with an evaluation and criticism of his job performance is certainly a serious invasion which would better be kept secret.
In Webb, the balancing of these constitutional rights arose within the context of a request to examine the names and addresses of employees of a municipality by a labor organizer. There, after holding such records were public, the court indicated that the protection at Article I, Section 5 was against an "unreasonable" invasion of privacy. Thus, in approaching the issue, it was necessary to determine whether employees and the city had a "reasonable expectation against disclosure of [their names and addresses]. . . . If a reasonable expectation of privacy is found, thenand only then, need we weigh or balance the public records . . .disclosure interest against the privacy interest as was done in Trahan. . . ." (Emphasis ours.) The Webb court held that there was no reasonable expectation of privacy.
Here, we deal with public employees' salaries funded by taxes paid the city by its citizens. In approaching the issue of whether a reasonable expectation exists, we underscore again that this fact must be kept in mind. *Page 5 
It is indeed unreasonable to expect that a person contributing money to one's salary should not be entitled to know the amount of that salary. There is clearly a pressing and reasonable need to know for example that a municipally employeed grass cutter's salary is not the same as that of the agency head under whom he works.
While we concede the personal nature of an individual's salary, we are unable to liken it to a detailed, written, subjective evaluation of the individual's performance. The extent of any possible embarrassment or adverse impact upon future employment opportunities cannot be said to approach that at issue in the Trahan case. Accordingly, we need go no further in this analysis.
It is our opinion that the City of Zachary must permit examination and reproduction of records containing the names and salaries of persons employed by it provided the procedures outlined within the public records law are met.
Trusting this will serve in response to your inquiry, we remain
 Very truly yours,
 WILLIAM J. GUSTE, JR. Attorney General
 BY:__________________ CHARLES L. PATIN, JR. Assistant Attorney General
 CLP/cr
 October 1, 1985 OPINION NUMBER 85-724 90-C: Public Records R.S. 44:1 et seq. R.S. 44:31
R.S. 44:11 Art. I, § 5 of La.Constitution
Names, job titles, duties, salaries and dates of employment of public employees of an assessor are subject to inspection under the Public Records Law, R.S. 44:1 et sea., R.S. 44:31. Unlisted telephone numbers and personally identifiable personnel data in personnel files should not be disclosed.
 Honorable Frank Granger, III Assessor, East Baton Rouge Parish 222 St. Louis Street Baton Rouge, Louisiana 70801
Dear Mr. Granger:
By your letter of September 19, 1985, you have requested an opinion of this office concerning access to the personnel records of the Assessor's Office.
You ask if an assessor's employee has an unlisted telephone number which is indicated in the office personnel records, is the number subject to being divulged as part of the public records? The answer to this is clearly, "no." R.S. 44:11 specifically provides that when a public employee has chosen to have a private or unlisted telephone number and shall not disclose it.
As to an employee's home address, the case of Webb v. City ofShreveport, (1979 App.), 371 So. 2d 316, held that a person inspecting public records has the right to obtain a list of public employees and their home addresses. However, the court was not faced with the issue of a public employee who has requested that his home address be kept confidential. It is theopinion of this office that when a public employee has specifically directed that his home address be kept confidential, the right to privacy, as established by Article I, Section 5 of the Louisiana Constitution, dictates that the employee's demand be honored and protects the employee's right to not have his home address revealed. (Compare: Trahan v. Larivee, (1978, App.) 365 So. 2d 294.
You have also provided this office with a copy of a letter requesting that you permit inspection of all "payroll and personnel records." That letter specifically requests names, job titles, duties, salaries and dates of employment of all persons *Page 2 
who were employed by the assessor's office between January 1, 1985 and the present.
Generally speaking, that request is valid and the records must be made accessible under the public records law. However, a personnel record of any individual may contain personally identifiable information which is protected by the right of privacy (Trahan, Supra). Enclosed are copies of Opinions 85-277, 79-1219 and 79-242 of this office which distinguish between records which are subject to inspection and those which are entitled to be obscured from public inspection under the right of privacy.
If there is a doubt as to whether portions of a particular record must be produced for inspection, there is the prospect of declaratory judgment in which the courts will resolve any dispute. (See R.S. 44:35)
In summary, it is our opinion that you must reveal the contents of the personnel records of the assessor's office and permit inspection of those records as to names, job titles, duties, salaries and dates of employment of employees. However, unlisted telephone numbers, confidential home addresses, employee performance evaluations, and other personally identifiable information are protected either by statute or the constitutional right of privacy and should not be revealed.
If questions should arise concerning other records, please advise and this office will attempt to answer them.
 Very truly yours,
 WILLIAM J. GUSTE, JR. Attorney General
 BY:_________________ KENNETH C.DEJEAN Chief Counsel
 KCD/clr
 15-A CONSTITUTIONAL LAW 61-A LAWS — Civil Rights 90-C PUBLIC RECORDS 128 TAXATION — Inheritance, succession, estate income taxes 167-1 UNITED STATES — in general Federal aid. etc
The date of filing of an individual income tax return falls within the scope of the intent and meaning of "tax data" R S 47 1508(B)(8) which must be kept confidential and which the Department of Revenue is prohibited from disclosing to the public in response to a simple public records request. Until anomalies discussed herein and dealing with privacy protection, address confidentiality, and mandatory disclosure of names and addresses contained in public records are finally resolved legislatively or judicially, precautionary procedures should be considered when called upon to disclose residential addresses of individuals, in order to provide proper legal protection of the rights of all involved
 Ms. Cynthia Bridges Secretary Louisiana Department of Revenue P.O. Box 201 Baton Rouge, Louisiana 70821-0201
Re: Disclosure of Certain Contents and Filing Date of Individual Income Tax Return
Dear Secretary Bridges:
In your letter to us requesting an attorney general's opinion, you explain that you have received a public records request to disclose whether an individual has filed a tax return and the date the return was filed. In connection with your request, you point to R.S. 47:5108, which mandates that all tax records be kept confidential and privileged but also provides for exceptions to this rule. You also cite our previous La. Atty. Gen. Opinion No. 96-532, which, relying also on previous La. Atty. Gen. Opinion No. 90-242, concluded that there was no legal prohibition against the Department of Revenue and Taxation making public, upon request, the information as to whether an individual has filed a Louisiana personal income tax return for a given year. Unfortunately, La. Atty. Gen. Opinion No. 96532 also added that disclosure of such information to the public at large was mandatory upon request because it is part of a public record within the meaning of Louisiana's open "public records law," R.S. 44:1 et seq. and 31 et seq. Now, you request further clarification in light of the particular request for disclosure that you have recently received and specifically ask whether the Department of Revenue, in responding to a public record request to disclose information as to whether an individual has filed a Louisiana personal income tax return for a given year, is mandated to include the date the tax return is filed.
It is our opinion that the date of filing of an individual income tax return falls within the scope of the intent and meaning of "tax data," R.S. 47:1508(B)(8), which must be kept confidential and which the Department of Revenue is prohibited from disclosing to the public in response to a simple public records request. *Page 2 
There are a number of legal issues that had to be resolved in arriving at this conclusion as well as some other complex legal questions that indirectly but inextricably bear upon the problem presented by your request for further explanation and clarification as to public disclosures involving individual income tax returns. Included among these is the need to correct an inaccuracy in previous La. Atty. Gen. Opinion No. 96-532 concerning public records. That inaccuracy was in appearing to conclude that certain personally identifying information contained in individual income tax returns were part of the public record within the scope of the intent and meaning of R.S. 44:1 et seq. and 31 et seq. and that its disclosure to any member of the public at large was, under such provisions, mandatory upon request. It is necessary to dispose of this question first because the jurisprudence of the state courts has construed R.S. 44:1 et seq. and 31 et seq. in conjunction with La.Const. (1974) art. 12, § 3 (mandating that "no person shall be denied the right to . . . examine public documents, except in cases established by law") to the end that, except for public records exempted therefrom by law, access by a member of the public to a public record for inspection and copying is a "fundamental right." See, for example, Local 100, ServiceEmployees' International Union v. Forrest, 95 1954 (La.App. 1st Cir. 5/10/96), 675 So.2d 1153 [citing Title Research Corp. v. Rausch,450 So.2d 933 (La. 1984)].
However, all of the information contained in a tax return (other than certain information, including names and addresses, contained in an occupational license, which is not implicated in this situation) is excluded from being a "public record" within the intent and meaning of R.S. 44:1 et seq. and 31 et seq. In this regard, R.S. 44:4(1) clearly provides,
 "§ 4. Applicability
 "This Chapter shall not apply:
 "(1) To any tax return or the information contained in any tax return. However, the name and address of any person who obtains an occupational license, the information on the face of the license, and information as to whether an occupational license has been issued to a particular person shall be public records.
 * * * (Emphasis added.) This provision is separate and apart from the exceptions to confidentiality provided in R.S. 47:1508. For its own reasons irrelevant to R.S. 44:1 et seq. and 31 et seq., R.S. 47:1508, as a sui generis tax statute, creates a special and unique rule of confidentiality and special and unique exceptions thereto. Accordingly, regardless of what R.S. 47:1508(B) provides, R.S. 44:4(1) exempts from the "public records law" (R.S. 44:1 et seq. and 31 et seq.) all information contained in tax returns (except certain Mrs. Cynthia Bridges, Secretary, DRT *Page 3 
information, including names and addresses, contained only in occupational licenses, which are not involved here). As a consequence, we hereby recall, disapprove, and overrule the inaccuracy contained previous La. Atty. Gen. Opinion No. 96-532 insofar as it appears to conclude that information contained in individual tax returns (not occupational licenses) are part of the public record within the scope of the intent and meaning of R.S. 44:1 et seq. and 31 et seq. and that disclosure to any member of the public at large is mandatory upon simple request.
This exemption of tax return information from the Public Records Law is a practical necessity, because the collection of many state taxes — including especially the state income taxes — relies critically on information revealed from federal tax returns to your department by federal authorities for the purpose of tax collection and enforcement and26 U.S. Code § 6103 [particularly § 6103(a)(2)] and 26 U.S. Code § 7213
[particularly § 7213(a)(2)] require state authorities to maintain such information in strict confidence. Indeed, R.S. 47:293(1) defines an individual's adjusted gross income for state income tax purposes as "the adjusted gross income of the individual for the taxable year that is reportable on the individual's federal income tax return," id. Thus, it would appear to be difficult, if not impossible, to enforce properly the state income tax law or to collect fully the state income taxes due to the state without the aid of such strictly confidential federal information.
With the Public Records Law question under R.S. 44:1 et seq. and 31 etseq. thus disposed of, a closer look may be had at R.S. 47:1508 with respect to your opinion request. But in doing so, we must emphasize that the Local 100, Service Employees' International Union case, supra, does not apply to this situation involving your request, since that case involved an occupational license (for nursing), which is not removed from the statutory scope of an open "public record" by R.S. 44:4(1), as is the individual tax return referred to in your request.
When records maintained by a state agency are not "public records" within the scope of the intent and meaning of R.S. 44:1 et seq. and 31et seq. because they are specifically and expressly excluded therefrom by such statutes as R.S. 44:4(1), then, unless they are otherwise governed by another special statutory provision, the head of the agency, within his or her sound discretion, must determine whether inspection of them will be allowed when there is a request therefor, and, if so, what information is to be disclosed and what information is to be withheld. For the most part, tax returns are governed by special statutory provisions, including R.S. 47:1508 and 1508.1, which vastly restrict the Secretary's discretion in the matter. R.S. 47:1508(A) provides, in pertinent part, the general rule which reads as follows:
 "Except as otherwise provided by law, the records and files of the secretary of the Department of Revenue or the records and files maintained *Page 4 
pursuant to a tax ordinance, excluding ad valorem property taxes and ad valorem property tax assessment rolls, of any political subdivision are confidential and privileged, and no person shall divulge or disclose any information obtained from such records and files except in the administration and enforcement of the tax laws of this state or of a political subdivision of this state."
R.S. 47:1508(C) and 1508.1 provide criminal penalties for unauthorized disclosure. The remainder of R.S. 47:1508 establishes various exceptions to this general rule of nondisclosure. Applicable to the situation described in your request, R.S. 47:1508(B) provides, in pertinent part:
 "§ 1508. Confidential character of tax records
 "* * * "B. Nothing herein contained shall be construed to prevent:
 "* * * "(8) The secretary from disclosing the name and address of any taxpayer who has filed an income or corporation franchise tax return, but he shall not disclose any tax data whatsoever with respect to any taxpayer, and such information shall be made available to any taxpayer upon his request.
 "* * *
R.S. 47:1508(B)(8) does not exempt from R.S.47:1508(A)'s sweeping rule of strict confidentiality the "date of filing" of the income tax return. Indeed, the date of filing is pivotally significant "tax data" directly affecting the time, manner, and ultimate amount of payment to be made in compliance with the tax laws. For example, R.S. 47:103 establishes the importance of the date of filing and allows the Secretary, in accordance with statutory procedures, to grant extensions thereof. R.S. 47:105
clarifies that the time of payment of the taxes, as well as the tax assessment itself, is determined by the date of filing and the date the filing is legally due. R.S. 47:1602 involves the date of filing and the due date of filing in the determination of whether tax penalties are assessed and to what extent they are assessed. Accordingly, the date of filing of an income tax return, in our opinion, falls within the scope of strict confidentiality mandated by R.S. 47:1508(A) and 1508.1 and not within the exemption provided by R.S. 47:1508(B)(8). *Page 5 
While this analysis answers the particular point of the immediate question, your request and our previous opinions referenced in your request now urge us to caution you about recently increasing anomalies in this area of law with respect to public disclosure of names linked with addresses and the federal government's executive and legislative recognition of address confidentiality as a vital crime prevention tool and as a matter falling within the scope of personal privacy protections, including possibly constitutional privacy protections. Thus, a potential constitutional conflict may be approaching over R.S.47:1508(B)(8)'s apparent mandate to "make available," id., "the name and address of any taxpayer who has filed an income or corporation franchise tax return . . . to any taxpayer upon his request," id.
First, as noted hereinabove, this statutory provision to make names and addresses of income tax payers available to other taxpayers is a specialsui generis rule of this particular tax legislation and does not fall within the rule of the Public Records Law. R.S. 44:4(1)'s specific exemption for "the information contained in any tax return" makes R.S. 44:1
et seq. and 31 et seq. inapplicable to all such information in income tax returns and, therefore, creates a public records exception "established by law" pursuant to La.Const. (1974) art. 12, § 3. Moreover, the R.S.47:1508(B)(8) provision uniquely limits disclosure of the information to other taxpayers only and does not provide for disclosure to the public — that is, not to "any person," as provided by R.S. 44:31 (B)(1), nor to every "person," as provided by La.Const. (1974) art. 12, § 3. Tax laws are considered to be sui generis legislation. Church Point WholesaleBeverage Co., Inc. v. Tarver, 614 So.2d 697, 708-709 (La. 1993) and the authorities cited therein.
The crux of the growing legal conflict appears to be with the following rationale expressed in Local 100, Service Employees' InternationalUnion, supra, and quoted from Webb v. City of Shreveport, 371 So.2d 316
(La.App. 2nd Cir.), writ denied, 374 So.2d 657 (La. 1979) in finding that city employees do not have a reasonable expectation of privacy against governmental disclosure of their names and addresses:
 "A person's employment, where he lives, and where he works are exposures which we all must suffer. We have no reasonable expectation of privacy as to our identity or as to where we live or work."
Local 100, Service Employees' International Union, supra, at p. 5,675 So.2d at 1156 (emphasis added). This rationale was applied in arriving at the conclusion that address confidentiality is not an expectation of privacy that "society at large is prepared to recognize as being reasonable," id., at p. 4, 675 So.2d at 1156.
The conflict is that there is, in reality, a large and growing body of law and evidence that society at large does indeed recognize address confidentiality as being a reasonable expectation of privacy. R.S.44:11(A)(3) now provides that the home address of public *Page 6 
employees in public employment records shall be confidential when such employees have so requested (legislatively overruling, in essence, Webbv. City of Shreveport, supra, the rationale of which, set forth hereinabove, was quoted and followed in Local 100, Service Employees'International Union, supra). Both R.S. 46:2134(B) and Ch. C. art. 1568(B) provide specific evidence of the recognition by society of the reasonableness of address confidentiality in domestic litigation. Particularly in the cases of a femme sole, address confidentiality — or at least the use of initials to disguise the gender of the resident — has long been recognized and recommended as a crime prevention tool against criminals who would target them as potential victims. At the federal level, the U.S. Justice Department has specifically recommended address confidentiality programs in its official anti-stalking report. SeeStalking and Domestic Violence: The Third Annual Report to Congress underthe Violence Against Women Act, U.S. Department of Justice, Office of Justice Programs, Washington, D.C. 20531; Available: "http://www.ojp.usdoj.gov/vawo/grants/stalk98.pdf"; p. 21. Address confidentiality programs even include the establishment by the state government itself in the office of a statewide elected officer, such as the secretary of state, of accommodation and forwarding addresses for private citizens. See, for example, the California Secretary of State's "Safe-at-Home" program, explained on the Internet at URL: "http://www.ss.ca.gov/safeathome/SafeatHomeexplanation.htm." And address confidentiality was the overriding motive for the federal Drivers' Privacy Protection Act of 1994 (18 U.S. Code §§ 2721-2725), which binds states and supersedes their own internal "open disclosure" policies with respect to public records.
It is perhaps in the federal Drivers' Privacy Protection Act of 1994 (DPPA) [Pub.L. 103-322, title XXX, Sec. 300002(a), Sept. 13, 1994] that the conflict between the federal policy of the right to privacy — including social recognition for the reasonableness of the privacy expectation of "the right to be let alone,"16B Am.Jur.2d, "Constitutional Law" § 603 (1998) and Olmstead v. U.S., 277 U.S. 438, 478 (1928) (Brandeis, J., dissenting), in the peace and tranquility of one's own private residence and to maintain address confidentiality to that end —versus some states' internal "open disclosure" policies with respect to public records, as explained in the rationale quoted hereinabove from theLocal 100, Service Employees' International Union case, supra — including the power of the state to obligate private citizens to place their private names and addresses into public records from which they must be disclosed openly to persons whose purpose is to violate and disturb the peace and tranquility enjoyed by such private citizens in their private residences — has reached the point of head-to-head collision. In the DPPA, Congress essentially prohibited the several states, except for specific purposes explicitly stated in the law, from disclosing certain personal information, including one's residential address, from the states' motor vehicle records, unless the person whose address it is consents to such disclosure. See 18 U.S. Code §§ 2721 et seq. Some states filed lawsuits challenging the constitutionality of Congress' power to enact such a prohibition against the several states, but the DPPA was finally held by the U.S. Supreme Court, in Reno v. Condon, 528 U. S. 141
(2000), to be constitutionally valid. Although, in specific response to the particular constitutional *Page 7 
challenge raised by South Carolina in that case, the U.S. Supreme Court in Condon held the DPPA to be a valid exercise by Congress of its commerce power, the Congressional explanation of the Act by its authors, especially Senator Barbara Boxer (Dem-CA), clearly reveal that the Act was also enacted as an exercise of Congress' power pursuant to Section 5 of the Fourteenth Amendment to the U.S. Constitution to enforce the federal constitutional rights of U.S. citizens — in this case, to enforce against the states the individual's fundamental federal constitutional right to privacy:
 Mrs. BOXER. "Mr. President, today I join the Senator from Virginia [Mr. Warner] and 26 other cosponsors, to offer an amendment to protect the privacy of all Americans.
 "In California, actress Rebecca Schaeffer was brutally murdered in the doorway of her Los Angeles apartment by a man who had obtained her home address from my State's DMV.
 "In Iowa, a gang of teenagers copied down the license plate numbers of expensive cars, obtained the home addresses of the owners from the Department of Transportation, and then robbed them at night.
 "In Tempe, AZ, a woman was murdered by a man who had obtained her home address from that State's DMV.
 "And, in California, a 31-year-old man copied down the license plate numbers of five women in their early twenties, obtained their home address from the DMV and then sent them threatening letters at home. I want to briefly read from two of those letters.
 "`I'm lonely and so I thought of you. I'll give you one week to respond or I will come looking for you.'
 "Another one read:
 `"I looked for you though all I knew about you was your license plate. Now I know more and yet nothing. I know you're a Libra, but I don't know what it's like to smell your hair while I'm kissing your neck and holding you in my arms.'
 "When they apprehended him, they found in his possession a book entitled `You Can Find Anyone' which spelled out how to do just that using someone's license plate. *Page 8 
 "In 34 States, someone can walk into a State Motor Vehicle Department with your license plate number and a few dollars and walk out with your name and home address. Think about this. You might have an unlisted phone number and address. But, someone can find your name or see your car, go to the DMV and obtain the very personal information that you may have taken painful steps to restrict.
 "Mr. President, the American people think that this is wrong. In a recent Lou Harris survey, 80 percent of the people were uncomfortable with one person obtaining this type of information about another.
 "Can we afford to wait until every State has their own tragedy? That is not the way to legislate. Our Representatives are elected to lead, to think ahead and — at every turn — to find ways to protect the people they represent. In many States, police officers, public figures and other victims of these privacy abuses have been allowed to request that the DMV keep their home addresses confidential. Of course, these people deserve privacy and protection. But, so do all of our people.
 * * * "With this amendment we have an opportunity to protect the privacy and safety of all Americans — not just the VIP's with special clout.
 "This area is clearly within Congress' authority to regulate. First, this is a fundamental issue of privacy. The Supreme Court has found that people have a right to be safe in their homes, that they have a right not to have the Government make public their personal data and that Congress can use it's powers — section 5 of the 14th amendment — [to] provide remedies for violations to constitutional rights.
 "What's more, with mail, cars, and harassment involved, this issue clearly has an impact on interstate commerce. As such — under article 1, section 8 — this area is well within Congress' authority to regulate. We all understand that interstate commerce is severely threatened when mail is used, when people are scared to drive in their cars, when their civil rights are violated, and when they live in fear of being harassed and stalked."
 Congressional Record, 103rd Congress (Senate — November 16, 1993), H.R. 3355 (successfully offering the DPPA as an amendment to the then still pending Violent Crime Control and Law Enforcement Act of 1993). *Page 9 
Thus, if the apparent Congressional view that the fundamental federal constitutional right to privacy extends to address confidentiality in public records, then a further anomaly may have been created with respect to interpreting La.Const. (1974) art. 1, § 5's privacy provision. The Supreme Court of Louisiana has said that this provision is broader in scope and more stringent in the protection of individual liberty than the federal constitutional right to privacy implied by the Bill-of-Rights amendments to the U.S. Constitution. State v. Perry, 610 So.2d 746, 756
(La. 1992). But if the Supreme Court of Louisiana continues to follow the rationale quoted above from Local 100, Service Employees' InternationalUnion, supra, on the basis that La.Const. (1974) art. 12, § 3, together with the statutory legislation enacted to implement it, invades and restricts La.Const. (1974) art. 1, § 5's privacy provision as a competing and "conflicting [state constitutional] value," 52 La. L.Rev. 575, 584 (1992), then the result might well turn out to be that La.Const. (1974) art. 1, § 5, is significantly narrower in scope and less stringent in the protection of individual liberty than the federal constitutional right to privacy made applicable to the several states through the due process clause of the Fourteenth Amendment.
Unless and until the legislature amends R.S. 47:1508(B)(8)'s provision requiring mandatory disclosure to other taxpayers of names and addresses in individual income tax returns, so as to bring this provision in line with R.S. 44:11 (A)(3), and/or until the federal and state judiciaries finally resolve in detail all of these anomalies dealing with privacy protection, address confidentiality, and mandatory disclosure of names and addresses contained in public records, R.S. 47:1508(B)(8)'s mandatory disclosure provision remains presumptively valid legislation; however, in this meantime, a potential federal civil rights violation also hangs, like the Sword of Damocles, over simple compliance with this provision. For this reason, our responsibility to give good legal advice and guidance compels us to make you aware of the option of allowing the courts to resolve individual conflicts over such matters, in order to protect yourself legally. Accordingly, when the name and address from the income tax return of an individual taxpayer is requested by another taxpayer, you can choose, as a precaution, to notify the taxpayer whose return it is — in a manner similar to what was done in Hays v. Lundy,616 So.2d 265 (La.App. 2nd Cir. 1993) writ granted and aff'd as amended,621 So.2d 616 (La. 1993) — to inform the taxpayer of the request for his name and address from his individual income tax return and of the identity of the requestor, in order to allow the taxpayer to decide and inform you of either his consent to the disclosure or his assertion of a right to privacy protection with respect to the disclosure request. If he consents to the disclosure, then the name and address may be made available without concern. If he asserts a right to privacy protection against the disclosure of his address, then you could file a declaratory judgment action in state court and implead both the requestor and the individual taxpayer to litigate the issue between themselves and have the court settle the matter. In impleading the individual taxpayer, his address, which he seeks to protect in the lawsuit, should be sealed as confidential in the court record until the court can resolve the merits. See, as an analogous example, the "Confidential Address *Page 10 
Form" — available at URL: "http://www.orleanscdc.gov/forms/cdc/abuse.pdf" — approved for use in the Orleans Parish Civil District Court in domestic cases.
And, of course, you already know that, in any event, you may not reveal any version of such name and address which has been corrected, supplemented, or otherwise changed with federally shared information protected by 26 U.S. Code §§ 6103 and 7213 or which contains a notation of verification from such information. In this regard, a person's name and mailing address from his federal tax return is a constituent part of "taxpayer identification," 26 U.S. Code § 6103(b)(6), falling within these federal laws.
Trusting this opinion has adequately answered your request, we remain
 Yours very truly,
 RICHARD P. IEYOUB Attorney General
 By:_________________ THOMAS S. HALLIGAN Assistant Attorney General
 RPI/TSH
 90-C PUBLIC RECORDS R.S.44 R.S.44:1(A) R.S. 44:31 R S 44:32 et Seq.
Payroll information and other records of town employees are subject to review by Pollock, LA 71467-0189 qualified persons.
 Charles E. Butterfield, Sr. Mayor Town of Pollock P.O. Box 189
Dear Mr. Butterfield:
You have requested our office answer questions regarding the legal and correct procedures for allowing the public to inquire and view employee's payroll checks and records.
Title 44 of the Louisiana Revised Statute governs public records in the State of Louisiana. La.R.S. 44:1 A (1) specifically states:
 A. (1) As used in this Chapter, the phrase "public body" means any branch, department, office, agency, board, commission, district, governing authority, political subdivision, or any committee, subcommittee, advisory board, or task force thereof, or any other instrumentality of state, parish, or municipal government, including a public or quasi-public nonprofit corporation designated as an entity to perform a governmental or proprietary function.
 (2)(a) All books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, recordings, memoranda, and papers, and all copies, duplicates, photographs, including microfilm, or other reproductions thereof, or any other documentary materials, regardless of physical form or characteristics, including information contained in electronic data processing equipment, having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body or concerning the receipt or payment of any money received or paid by or under the authority of the constitution or the laws of this state, are "public records", except as otherwise provided in this Chapter or the Constitution of Louisiana. *Page 2 
The Town of Pollock falls within the realm of "public body" by the definition set in La.R.S. 44:1A (1). Also, generally, payroll checks and other records fall within those materials deemed public by La.R.S.44:1A (2). Attorney General Opinion 85-809 (attached) is factually similar to this case and reaffirms this holding. Financial sheets, payroll records, and other records of a Louisiana town are public records that can be seen upon request. However, payroll checks, not in the possession of the public body when sent or delivered to personnel, are outside the scope of the Public Records Act.
Also, see generally Attorney General Opinions 98-278, 78-495, and 78-575 which all affirm that payroll records do fall within Title 44 and are subject to disclosure. All other records of your Town's employees fall under the public records doctrine unless specifically exempted by R.S. 44 or the Louisiana Constitution of 1974.
La.R.S. 44:31 specifically states that "any person of the age of majority may inspect, copy or reproduce, or obtain a reproduction of any public record." La.R.S. 44:32 et seq. give the specific guidelines as to the release and upkeep of public records.
I trust the above has sufficiently answered your questions regarding public records in Louisiana. If you have any other inquiries or questions, feel free to contact this office at your convenience.
 Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY:__________________ CHARLES H. BRAUD JR. Assistant Attorney General
 RPI/CHB:mjb Enclosures
 May 19, 1978 OPINION: #78-575
90-C — PUBLIC RECORDS R.S. 44:31, 32 — Student work-study payroll records and certitication of daily or hourly attendance records are public records, subject to Title 44, L.R.S., and should be made available at cost.
 Mr. Thomas J. Bethune Director Financial Aid and Internal Auditor Delgado College 615 City Park Avenue New Orleans, La. 70119
Dear Mr. Bethune:
Your question addressed to the Attorney General, as we understand it, is whether the payroll records and the certification of the daily and hourly attendance records of a work-study student are public records, subject to Title 44 of the Louisiana Revised Statutes.
It has been the opinion of this office for a number of years that the Public Records Act must be given the most liberal interpretation as mandated by the Legislature.
You have also asked whether these records are subject to the "Privacy Act". By that we assume you mean the Federal Privacy Act found both in Title 20 of the United States Code which concerns education and Title 5 of the United States Code, Section 552 (A) et seq., which is commonly referred to as the Federal Privacy Act.
We have made a thorough search of Title 20, and find no reference to the privacy of payroll records of student work-study.
Likewise, under Title 5, we have found no such reference.
If the funds for the work-study program were exclusively federal, there might be an argument about the applicability of Title 5. However, it is our understanding that the funds involved in this matter are from the State of Louisiana. *Page 2 
Therefore, it is the opinion of this office that the student work-study payroll records and the certification of the daily or hourly attendance records are public records, subject to Title 44 of the Louisiana Revised Statutes and should be made available at cost, pursuant to L.R.S. 44:31
and 32.
 Yours very truly,
 WILLIAM J. GUSTE, JR. Attorney General
 By:___________________ KENDALL L. VICK Assistant Attorney General
 KLV:ab
 October 25, 1985 OPINION NO. 85-809
90-C PUBLIC RECORDS
The financial records, payroll sheets and other records of the Town of Farmerville are public records and may be viewed by qualified residents upon request.
 R.S. 44:1(A) R.S. 44:31
 Dr. J.E. Booth, M.D. Coroner 301 North Lafayette Farmerville, Louisiana
Dear Dr. Booth:
You requested an opinion as to whether the financial records, payroll sheets and other records of the Town of Farmerville are public records that can be seen by any citizen of the town upon request.
R.S. 44:1(a) concerns what is a public record and states:
 A. (1) As used in this Chapter, the phrase "public body" means any branch, department, office, agency, board, commission, district, governing authority, political subdivision, or any committee, subcommittee, advisory board, or task force thereof, or any other instrumentality of state, parish or municipal government, including a public or quasipublic nonprofit corporation designated as a entity to perform a governmental or proprietary function.
 (2) All books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, recordings, memoranda, and papers, and all copies, duplicates, photographs, including microfilm, or other reproductions thereof, or any other documentary materials, regardless of physical form or characteristics, including information contained in electronic data processing equipment, having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was *Page 2 
conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body or concerning the receipt or payment of any money received or paid by or under the authority of the constitution or the laws of this state, are "public records," except as otherwise provided in the Chapter or as otherwise specifically provided by law.
 (3) As used in this Chapter, the word "custodian" means the public official or head of any public body having custody or control of a public record, or a representative specifically authorized by him to respond to requests to inspect any such public records.
The Town of Farmerville fits within the definition of 44:1(A)(1). Financial records, payroll sheets and other records fall within the definition of 44:1 (A)(2).
R.S. 44:31 concerns who has the right to examine records and states:
 Except as otherwise provided in this Chapter or as otherwise specifically provided by law, and in accordance with the provisions of this Chapter any person of the age of majority may inspect, copy or reproduce or obtain a reproduction of any public record.
For reference as to the procedures involved within keeping and requesting records, please refer to R.S. 44:32 and following.
These above statutes should answer your question. Therefore, it is the opinion of this office that the financial records, payroll sheets and other records of the Town of Farmerville are public records that can be seen by any qualified *Page 3 
citizen of the town upon request.
If you are in need of further information, please contact this office.
 Sincerely yours, WILLIAM J. GUSTE, JR. ATTORNEY GENERAL
 BY:_________________ ARTHUR J. FINN STAFF ATTORNEY
 AJF/re
 AUGUST 25, 1981 OPINION NUMBER 98-278 53 — Hospitals 90-C — Public Records LSA-R.S. 44:1
LSA-R.S. 44:7(A) LSA-R.S. 44:36(A)
Financial records, including accounts receivable information and payroll records minus any patient specific identification, are generally subject to disclosure pursuant to the Public Records Act. X-rays, however, are not subject to disclosure.
 Mayor Warren Pierrotti P.O. Box 490 Mamou, LA 70554
Dear Mayor Pierrotti:
You have requested an Attorney General's opinion on record retention requirements for hospital records. You state that the Town of Mamou is presently sorting through a large amount of stored records belonging to a hospital facility.
Your record retention concerns are mainly focused on accounts receivable records of past patients as well as past payroll records, X-rays, and related medical records.
The hospital facility at issue is owned and managed by the Town of Mamou which is a political subdivision of the state and a `public body' subject to the Public Records Act. LSA-R.S. 44:1 et seq. Consequently, the Public Records Act applies to the hospital facility. LSA-R.S.44:36(A) mandates that public records shall be preserved and maintained for at least three (3) years from the date on which the public record was made.
While certain hospital records have been excepted from portions of the Public Records Act, LSA-R.S. 44:7(A) requires that the three year retention period mandated by LSAR.S. 44:36 still apply to those records. LSA-R.S. 44:7(A) states:
 Except as provided in Subsections B, C, and E hereof and R.S. 44:17, the charts, records, reports, documents, and other memoranda prepared by physicians, surgeons, psychiatrists, nurses, and employees in the public hospitals of Louisiana, adult or juvenile correctional institutions, public mental health centers, and public schools for the mentally deficient to record or indicate the past or present condition, sickness or disease, physical or mental, of the patients treated in the hospitals are exempt from the provisions of this Chapter, except the provisions of R.S. 44:36 and R.S. 44:39. Nothing herein shall prevent hospitals from providing *Page 2 
necessary reports pursuant to R.S. 22:213.2 and R.S. 44:17, nor shall any liability arise from the good faith compliance therewith. (Emphasis added.)
I trust this sufficiently addresses your concerns. If our office may be of further assistance, please do not hesitate to contact us.
 Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By:__________________ CARLOS M. FINALET, III Assistant Attorney General
 RPI:CMF:glb
 June 1, 1978 OPINION NUMBER 78-495
Mr. Ted Blanchard, Member West Baton Rouge Police Jury Post Office Box 496 Port Allen, Louisiana 70767
Dear Mr. Blanchard:
By your recent letter to William J. Guste, Jr. Attorney General, you have sought an opinion on the following question:
 "Can an individual serve in the capacity of a school board member and a police juror at the same time?"
After a detail review of existing legislation which controls this issue, this office is of the opinion that an individual may not serve concurrently both a member of a parish school board and as a member of the parish police jury.
The controlling legislation in this area is R.S.42:31 which clearly expresses the intent of the legislature to prohibit such dual office holding by persons who seek membership on two or more parish governing authorities.
If we can be of further assistance to you, please do not hesitate to call upon us.
 Very truly yours,
 WILLIAM J. GUSTE, JR. ATTORNEY GENERAL.
 KENNETH C. DEJEAN Assistant Attorney General
 KCD/grd